UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

WILL MOSS, JR. and VINNIE BROOKS,

          Defendants.

CR. NO. S-03-0550 WBS

MEMORANDUM AND ORDER
RE: MOTION TO SUPPRESS

----oo0oo----

        Defendant Will Moss, Jr. has moved to suppress all evidence obtained as a result of an arrest of the defendant and a search of his vehicle on December 12, 2003, and all evidence obtained as a result of the subsequent search of his residence at 5419 Tropicana Blvd., Apt. 1206, Las Vegas, Nevada on December 17, 2003.

        The search of defendant's residence and second search of his vehicle on December 17, 2003 were conducted pursuant to search warrants supported by affidavit which set forth probable cause for the search. Defendant does not dispute that the searches performed pursuant to warrants on December 17, 2003 were

1

supported by probable cause.  The only criticism of those searches is that they were tainted by what was discovered in the earlier arrest of defendant and search of his vehicle on December 12, 2003.  Accordingly, the court examines the undisputed facts surrounding that arrest and search.

## FACTS

Stockton police officers began their investigation of Will Moss, Jr. in July 2003.  By December 2003 they had interviewed several witnesses, gathered documentary evidence, and had otherwise corroborated the statements of witnesses who identified the defendant as a pimp who with the assistance of Vinnie Brooks had moved women, including at least one minor, inside the State of California and to at least Las Vegas, Nevada for the purposes of prostitution.

On December 12, 2003, between approximately 3:30 and 4:00 p.m., San Joaquin County Probation Officer James Christensen called Stockton Police Department Sergeant Kenneth Praegetzer and advised that while he was driving in the area of Sierra Nevada Street and Wilson Way in Stockton he observed three or four black females on the street.  He said the women stood out to him because they were younger and dressed in a flashy manner, including high heels and tight, short clothing in contrast to the typical dress, age, and demeanor of local prostitutes on Wilson Way.

Sgt. Praegetzer relayed this information to Officers James Chraska, José Lopez, Phillip Thompson, and Jonathan Kislingbury for further investigation.  Those officers proceeded to the Wilson Way area, which was well known for prostitution

2

activity.  Officer Kislingbury observed four females walking on Wilson Way who met the description he had been provided.  He observed a white female, later identified as Stephanie Bednarik, walking with a black female, later identified as Summer Sawyer, and then saw two additional black women, later identified as Allison Carruth and Margaret Hutchinson, walking a few blocks south on Wilson Way.  Officer Kislingbury recognized Summer Sawyer as a prostitute with whom he had dealings in the past.

  The officers observed the activities of the women in the prostitution area. Officer Kislingbury watched Carruth and Hutchinson wave at traffic and motion cars to the side of the road.  They waved at three vehicles with male drivers and called out to them to turn around.  As Officer Kislingbury stopped at the stop sign at the intersection of Flora Street and Wilson Way to turn onto Wilson Way, Carruth and Hutchinson were only about twenty-five feet away walking southbound on Wilson Way.  As he turned onto Wilson Way, Hutchinson called out to him and said, "Hey, don't go, come back." Officer Kislingbury replied, "hello" and relayed this information to the other officers.

  Meanwhile, Officers Chraska and Lopez observed Carruth and Hutchinson loitering in the area of the Wienerschnitzel. After Hutchinson waved at them, Officer Chraska pulled into the restaurant parking lot in the unmarked police car.  Carruth and Hutchinson then approached the car.  Carruth pushed her chest towards Officer Lopez and asked him to touch her.  Hutchinson said hello to Officer Chraska and then pushed her breasts towards

3

the open window and asked him to touch her.[1]  When Officer Chraska told her he wanted to have sex with her, she replied, "[w]ell how much you got."  Officer Chraska told her he had sixty dollars, but did not touch her.  At that point Carruth walked towards Hutchinson and told her to leave.

The officers then arrested Carruth and Hutchinson for loitering for the purposes of prostitution.  They both indicated that their home address was 5419 Tropicana Boulevard, apartment #1207, an address known to the officers as the address of defendant Moss.  In addition, Carruth was using a Boost cell phone, known to be commonly used by prostitutes, that contained numbers for "Slim," "Tachi," and "Cinnamon."  Those names were familiar to the officers because the Vice Unit had an ongoing investigation of pimping and pandering against Will Moss, Jr. who is also known as Slim.  Tachi was known to be a nickname for co-defendant Vinnie Brooks.

After Carruth and Hutchinson were taken to the police station, Officer Kislingubury pulled out of the Wienerschnitzel parking lot and noticed both Sawyer and Bednarik on the sidewalk just south of the restaurant talking to some other women on the street.  It appeared to him that Sawyer and Bednarik were being warned by other prostitutes on the street that law enforcement had made contact with Carruth and Hutchinson.  Sawyer and Bednarik appeared nervous, changed the direction they were walking, entered the Wienerschnitzel, and sat down.  Officer Kislingbury

---

[1] The fact that the women asked the officers to touch them was consistent with the approach taken by prostitutes who want to avoid getting arrested and know that law enforcement officers are not permitted to touch them.

4

1 observed Sawyer talking on her cell phone while she was at the
2 table.
3     About twenty minutes later Carruth and Hutchinson left
4 the Wienerschnitzel, followed by Officer Kislingbury and others.
5 As the women walked westbound on Fremont Street to American
6 Street, they got into a blue Cadillac, four dour, license plate
7 number 2ZJX115.  Accordingly to Officer Kislingbury, the women
8 did not flag the car down, but got into it as if they knew the
9 driver.  The vehicle was familiar to Officer Kislingbury and
10 others in the unit as being registered to Will Moss, Jr.  Officer
11 Kislingbury drove alongside the Cadillac and confirmed that
12 defendant Moss was the driver.
13     Shortly thereafter defendant was pulled over and
14 arrested for pimping and pandering prostitution.  An inventory
15 search of the car was completed before it was towed from the
16 scene.  During the inventory search officers found a computer,
17 handgun, and shotgun ammunition.

                                DISCUSSION

19     Probable cause to arrest exists when "under the
20 totality of the circumstances known to the arresting officers, a
21 prudent person would have concluded that there was a fair
22 probability that [the defendant] had committed a crime."  United
23 States v. Potter, 895 F.2d 1231, 1233-1234 (9th Cir. 1990),
24 *quoting* United States v. Smith, 790 F.2d 789, 792 (9th Cir.
25 1986).  In determining whether probable cause has been
26 established, the court can consider "that a trained law
27 enforcement agent may be able to perceive and articulate meaning
28 in given conduct which would be wholly innocent to the untrained

                                    5

observer." <u>United States v. Moses</u>, 796 F.2d 281, 284 (9th Cir. 1986).

The Ninth Circuit has held that in applying these probable cause standards "we must consider all the facts known to the officers and consider all the reasonable inferences that could be drawn by them before the arrest. <u>United States v. Bernard</u>, 623 F.2d 551, 559, *quoting*, <u>United States v. Martin</u>, 509 F.2d 1211, 1213 (9th Cir. 1975). The collective knowledge of the officers and agents can be considered in determining if there was probable cause to arrest. <u>Id.</u> at 561.

The foregoing facts constituted probable cause to arrest defendant Moss. Defendant points to certain discrepancies between Probation Officer Christensen's observations as set forth in his declaration in support of the government's response to this motion and the version of Christensen's observations summarized in the police reports, such as whether Christensen observed the women dropped off at the scene before their encounters with the officers, and the race of each of the women. Those discrepancies do not establish that the police officers lied in their reports, as defense counsel argues. More importantly, the question is not whether police officers lied in subsequent reports, but whether they had probable cause to arrest defendant and search his vehicle on December 12, 2003. Based on the now uncontroverted facts, they did have probable cause.

Upon the defendant's arrest, the limited search of his vehicle was justified as both an inventory search and as a search incident to arrest. Because not only defendant was arrested but both of his passengers were also arrested for

outstanding warrants, their arrests also justified a search of the car that would have uncovered the gun and other evidence. See Moses, 796 F.2d at 284 (finding that probable cause to arrest passenger justified search of car incident to arrest).

      IT IS THEREFORE ORDERED that defendant Moss' motion to suppress be, and the same hereby is, DENIED.

Dated: June 2, 2005

_William B. Shubb_
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE