1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                 No. 2:03-cr-0550 WBS DAD P

12                  Petitioner,

13         v.

14   WILL MOSS, Jr.,                           FINDINGS AND RECOMMENDATIONS

15                  Respondent.

16

17         Movant is a federal prisoner proceeding pro se with a motion to vacate, set aside, or

18   correct his sentence pursuant to 28 U.S.C. § 2255 which he filed on October 26, 2011.  (ECF No.

19   250.) [1]  Therein, movant challenges his federal conviction on four counts of sex trafficking of

20   children by force, fraud or coercion in violation of 18 U.S.C. § 1591(a)(1); one count of coercion

21   and enticement for prostitution in violation of 18 U.S.C. § 2422(a); two counts of interstate

22   transportation of a minor with intent to engage in criminal sexual activity in violation of 18

23   U.S.C. § 2423(a); one count of possession of a firearm in furtherance of a crime of violence in

24   violation of 18 U.S.C. § 924(c)(1)(A); three counts of being a convicted felon in possession of a

25   firearm in violation of 18 U.S.C. § 922(g)(1); and one count of possession of an unregistered

26

27   _____

     [1]  Movant was sentenced to a total term of 480 months in the custody of the United States Bureau
28   of Prisons, to be followed upon his release from imprisonment by a 120 month term of supervised
     release.  (ECF No. 249.)

                                                  1

1  firearm in violation of 26 U.S.C. § 5861(d).  He claims that both his trial and appellate counsel

2  rendered him ineffective assistance.

3       On January 20, 2015, the undersigned issued findings and recommendations

4  recommending that movant's § 2255 motion be denied.  On March 16, 2016, movant filed thirty-

5  three pages of objections to those findings and recommendations, including many new arguments

6  and allegations which he had not previously raised in these proceedings.  By separate order, the

7  undersigned will in due course address those objections filed by petitioner as well as the status of

8  the currently pending findings and recommendations.

9       However, shortly after filing his objections to the January 20, 2015 findings and

10  recommendations, movant filed a motion entitled "Motion for Leave to File Motions Pursuant to

11  Federal Rules of Civil Procedure Rule 6(b)(1)(B) and Rule 15(c)(2)."  In that motion, movant

12  seeks leave to amend his § 2255 motion so as to add three additional claims for relief.  For the

13  reasons set forth below, the undersigned recommends that movant's belated request to amend his

14  § 2255 motion to add additional claims be denied.

15  **I. Background**

16       In his motion to amend, movant seeks to add three additional claims of ineffective

17  assistance of appellate counsel.  (ECF No. 299).  Specifically, petitioner now wishes to claim that

18  his appellate counsel rendered him ineffective assistance by:  (1) failing to raise a claim based on

19  the alleged prosecutor's misconduct in vouching for the credibility of a government witness and

20  knowingly presenting false testimony at trial; (2) failing to "argue adequately and effectively"

21  that movant had the right to be sentenced on the basis of "accurate and reliable information;" and

22  (3) failing to raise a claim based on the trial court's failure to give a "special jury verdict form

23  based on movant's defense theory."  (Id. at 7, 14, 19.)

24       Respondent opposes the motion to amend, arguing that movant's new claims are untimely

25  and do not relate back to the filing of his original §2255 motion.  (ECF No. 304 at 1-7.)  In

26  response, movant offers a lengthy explanation of why he is entitled to equitable tolling of the

27  applicable statute of limitations and why, in any event, his newly offered claims relate back to his

28  original § 2255 motion.  (ECF No. 309 at 1-10.)

2

1    For the reasons set forth below, even assuming arguendo that movant's proposed new

2    claims were timely presented the undersigned concludes that they are clearly meritless, rendering

3    the granting of leave to amend futile.  Accordingly, movant's motion for leave to amend his §

4    2255 motion should be denied.

5    **II.  Applicable Law**

6    Below, the undersigned will first review the legal standards applicable to a motion to

7    amend such as that pending before the court as well as those standards which govern the belated

8    ineffective assistance of appellate counsel claims which movant now seeks to present.

9    **A.  Amendment of Pleadings**

10    The amendment of a § 2255 motion is governed by Rule 15 of the Federal Rules of Civil

11    Procedure.  See Anthony v. Cambra, 236 F.3d 568, 576 (9th Cir. 2000); see also United States v.

12    Thomas, 221 F.3d 430, 436 (3d Cir. 2000).  Under Federal Rule of Civil Procedure 15(a), one

13    seeking collateral relief may amend his pleadings once as a matter of course before a responsive

14    pleading is served and may seek leave of court to amend his pleading at any time during the

15    pendency of the proceeding.  See Mayle v. Felix, 545 U.S. 644, 654 (2005); see also In re Morris,

16    363 F.3d 891, 893 (9th Cir. 2004) (Rule 15(a) applies to habeas actions with the same force that it

17    applies to other civil cases).  Although leave to amend should be given freely, a court may deny a

18    motion to amend if the motion is made in bad faith, there would be prejudice to the opposing

19    party, the amendment would be futile or would delay resolution of the action, or if the party acted

20    in a dilatory fashion in seeking leave to amend.  Foman v. Davis, 371 U.S. 178, 182 (1962).

21    Specifically, it has been recognized as appropriate to deny leave to amend where the proposed

22    amendment would be futile.  Id. at 182; see also United States v. Smithkline Beecham Clinical

23    Labs., 245 F.3d 1048, 1052 (9th Cir. 2001) ("Futility of amendment can, by itself, justify the

24    denial of a motion for leave to amend."); Bonin v. Calderon, 59 F.3d 815, 845-46 (9th Cir. 1995)

25    (stating in the habeas context that futility of amendment justifies the denial of a motion for leave

26    to amend); Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).

27    /////

28    /////

3

1      **B. Ineffective Assistance of Counsel**

2          The clearly established federal law governing ineffective assistance of counsel claims is

3  that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To

4  succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was

5  deficient and that (2) the "deficient performance prejudiced the defense."  Id. at 687.  Counsel is

6  constitutionally deficient if his or her representation "fell below an objective standard of

7  reasonableness" such that it was outside "the range of competence demanded of attorneys in

8  criminal cases."  Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so

9  serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Harrington v.

10  Richter, 562 U.S. 86, 87 (2011) (quoting Strickland, 466 U.S. at 687).

11          Prejudice is found where "there is a reasonable probability that, but for counsel's

12  unprofessional errors, the result of the proceeding would have been different."  Strickland, 466

13  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

14  outcome."  Id.  "The likelihood of a different result must be substantial, not just conceivable."

15  Richter, 562 U.S. at 112.

16          The Strickland standards apply to appellate counsel as well as trial counsel.  Smith v.

17  Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

18  However, an indigent defendant "does not have a constitutional right to compel appointed counsel

19  to press nonfrivolous points requested by the client, if counsel, as a matter of professional

20  judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983) ((an

21  experienced attorney knows the importance of "winnowing out weaker arguments on appeal and

22  focusing on one central issue if possible, or at most on a few key issues").  See also Smith v.

23  Robbins, 528 U.S. 259, 288 (2000) ("'only when ignored issues are clearly stronger than those

24  presented, will the presumption of effective assistance of counsel be overcome.'") (quoting Gray

25  v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)); Smith v. Murray, 477 U.S. 527, 536 (1986) ("Th[e]

26  process of winnowing out weaker arguments on appeal and focusing on those more likely to

27  prevail, far from being evidence of incompetence, is the hallmark of effective appellate

28  advocacy.").

4

1    Counsel "must be allowed to decide what issues are to be pressed." <u>Barnes</u>, 463 U.S. at

2    751.  Otherwise, the ability of counsel to present the client's case in accord with counsel's

3    professional evaluation would be "seriously undermined." <u>Id.</u> at 746.  <u>See also Smith v. Stewart</u>,

4    140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs"

5    because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of

6    course, no obligation to raise meritless arguments on a client's behalf.  <u>See</u> <u>Strickland</u>, 466 U.S. at

7    687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not

8    deficient for failing to raise a weak issue.  <u>See</u> <u>Miller</u>, 882 F.2d at 1434.  In order to establish

9    prejudice in this context, a petitioner must demonstrate that, but for counsel's errors, he probably

10   would have prevailed on appeal.  <u>Id.</u> at 1434 n.9.

11   **C.  Prosecutorial Misconduct**

12   A violation of a defendant's rights occurs if the government knowingly uses false

13   evidence in obtaining a conviction.  <u>Giglio v. United States</u>, 405 U.S. 150, 153-54 (1971); <u>Napue</u>

14   <u>v. Illinois</u>, 360 U.S. 264, 269 (1959).  It is clearly established that "a conviction obtained by the

15   knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the

16   false testimony could have affected the jury's verdict." <u>United States v. Bagley</u>, 473 U.S. 667,

17   680 n.9 (1985).  <u>See also</u> <u>Morales v. Woodford</u>, 388 F.3d 1159, 1179 (9th Cir. 2004) ("The due

18   process requirement voids a conviction where the false evidence is 'known to be such by

19   representatives of the State.'") (quoting <u>Napue</u>, 360 U.S. at 269).  Due process is violated in such

20   circumstances regardless of whether the false testimony was obtained through the active conduct

21   of the prosecutor, <u>Hysler v. Florida</u>, 315 U.S. 411 (1942); <u>Mooney v. Holohan</u>, 294 U.S. 1033

22   (1935), or was unsolicited.  <u>Napue</u>, 360 U.S. at 269 ("[t]he same result obtains when the State,

23   although not soliciting false evidence, allows it to go uncorrected when it appears").  This rule

24   applies even where the false testimony goes only to the credibility of the witness.  <u>Napue</u>, 360

25   U.S. at 269; <u>Mancuso v Olivarez</u>, 292 F.3d 939, 957 (9th Cir. 2002).

26   There are several components to establishing a claim for relief based on the prosecutor's

27   introduction of perjured testimony at trial.  First, the petitioner must establish that the testimony

28   was false.  <u>United States v. Polizzi</u>, 801 F.2d 1543, 1549-50 (9th Cir. 1986).  Second, the

1    petitioner must demonstrate that the prosecution knowingly used the perjured testimony.  Id.

2    Finally, the petitioner must show that the false testimony was material.  United States v. Juno-

3    Arce, 339 F.3d 886, 889 (9th Cir. 2003).  False evidence is material "if there is any reasonable

4    likelihood that the false [evidence] could have affected the judgment of the jury."  Hein v.

5    Sullivan, 601 F.3d 897, 908 (9th Cir. 2010) (quoting Bagley, 473 U.S. at 678).  Mere speculation

6    regarding these factors is insufficient to meet petitioner's burden.  United States v. Aichele, 941

7    F.2d 761, 766 (9th Cir. 1991).

8         It is also improper for a prosecutor to vouch for the credibility of a government witness.

9    United States v. Hermanek, 289 F.3d 1076, 1098 (9th Cir. 2002); see also United States v.

10   Young, 470 U.S. 1, 7 n.3 (1985).  "Vouching consists of placing the prestige of the government

11   behind a witness through personal assurances of the witness's veracity, or suggesting that

12   information not presented to the jury supports the witness's testimony."  United States v.

13   Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993).  "Vouching typically involves the prosecution

14   bolstering the testimony of its own witness."  United States v. Wright, 625 F.3d 583, 610 (9th Cir.

15   2010) (quoting United States v. Nobari, 574 F.3d 1065, 1078 (9th Cir. 2009)).  Vouching is

16   "especially problematic in cases where the credibility of the witness is crucial."  Necoechea, 986

17   F.2d at 1276.  However, in fashioning closing arguments prosecutors are allowed "reasonably

18   wide latitude," United States v. Birges, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to

19   argue "reasonable inferences from the evidence."  United States v. Gray, 876 F.2d 1411, 1417

20   (9th Cir. 1989).

21   **III.  Movant's Proposed New Claims**

22        **A. Ineffective Assistance of Appellate Counsel in Failing to Raise a Claim Based on**

23   **Prosecutorial Misconduct**

24             **1.  Movant's Allegations**

25        The first claim that movant seeks to add to his pending § 2255 motion is that his appellate

26   counsel rendered ineffective assistance in failing to raise a claim that the prosecutor knowingly

27   elicited false testimony from Shaneka McGuire and then improperly vouched for that false

28   /////

6

1    testimony in closing argument.  (ECF No. 299 at 8.)  The background to this proposed claim is as

2    follows.

3        At movant's trial, Ms. McGuire testified that once while she was in the car with movant

4    on the way to Oakland, he prevented her from leaving by putting a gun to her side.  (Reporter's

5    Transcript on Appeal (RT), Volume II at 171-73.)  McGuire testified that she could not feel the

6    gun, but she could see it.  (Id. at 173.)  She stated this made her feel "scared," so she stopped

7    trying to get out of the car.  (Id.)

8        Movant argues that other testimony introduced at his trial revealed that "this incident did

9    not occur."  (ECF No. 299 at 9.)  He notes that Violet Vest testified she heard movant tell one of

10   his girls during the same car ride that he was "not a kidnapper" and that "if you want to get out,

11   get out."  (Id.; see also RT, Volume I at 220-21.)  Movant states that when Vest heard these

12   remarks she was sitting in the back seat with McGuire.  (ECF No. 299 at 9.)  He further argues

13   that Vest "never once throughout her many interviews to the police or the F.B.I. or her grand jury

14   testimonies did she ever state that she witnessed Movant pointing a sawed-off shotgun" at

15   McGuire in order to prevent her from getting out of the car.  (ECF No. 299 at 9-10.)

16       Movant also notes that Vinnie Brooks testified at trial that during the same car ride

17   movant told McGuire, "you want out, get out," but McGuire stated she wanted to go with movant.

18   (Id. at 10; RT, Volume III at 191.)  Brooks also testified that she didn't see anybody point a gun

19   at McGuire during the car ride.  (Id.)  Movant states that Brooks was sitting in the front passenger

20   seat of the car at the time these statements were made and therefore would have seen if movant

21   put a shotgun to Ms. McGuire's side.  (ECF No. 299 at 10.)  Movant also argues that "Ms. Brooks

22   had also given several F.B.I. interviews as well as testified before the grand jury and never once

23   did she claim this incident had occurred."  (Id. at 10.)

24       Movant complains that the prosecutor knew McGuire had not told the police or the F.B.I.

25   about movant threatening her with a gun, and also knew that none of the other trial witnesses

26   corroborated McGuire's trial testimony about this incident, but still chose to elicit McGuire's

27   testimony that movant threatened her with a gun in the car.  In addition, movant notes that the

28   /////

7

prosecutor made the following argument at the hearing on movant's Rule 29 motion for judgment of acquittal:

> But as it relates to Count Three, Count Three alleges that the Defendant benefited from the prostitution between July 3rd and September 7th.  That includes the time period that the testimony reflects that all of the girls and Mr. Moss came back to the Stockton, Sacramento, Oakland area and comports with Shaneka's testimony that the shotgun was put to her side.  And that the other girls saw the shotgun both in the car and in the hotel room once they got to Oakland.

(Id. at 11; RT, Volume IV at 67.)

     Movant also wishes to now claim that the prosecutor improperly "vouched" for McGuire's testimony "by suggesting to the jury that they could reasonably conclude that Ms. McGuire cannot tell a lie" (ECF No. 299 at 11) and that his appellate counsel was ineffective for failing to raise this argument on appeal.  Movant points to the following statements made by the prosecutor during her closing argument:

> Now, Mr. Chastaine makes an argument in opening statement that the fact that Shaneka and Alexis were let go somehow undermines the idea that the Defendant used force to conduct his operations.  But Shaneka's testimony is chilling when she describes trying to get out of the car when her friend Alexis Lowe gets out, and instead of being let out, the Defendant takes the sawed-off shotgun, Government's Exhibit number 15, and I urge you to pick this up, it's heavy.  He points it at her side and as she starts to get out of the car, the shotgun touches her side.  No words need to be spoken.  She knows exactly what that means.  Slow or not, she knows that if she moves, she could be blown apart by a shotgun.  So she sits back down.

> Now, Mr. Chastaine cross examined extensively on the issue of who Shaneka McGuire told this to.  Now, it's for you to be the judges of the credibility of the witnesses.  It is for you to decide who is telling the truth and what version of the truth.  The version offered up by Mr. Chastaine that Shaneka McGuire is making this up.  You will be told by the judge that you consider a witness's demeanor, their bias, their interest, their motive, if any.  You can consider the circumstances under which they made statements previously and they made statements in court.  You can consider all of that.

> I submit to you that when you consider all of the circumstances surrounding Shaneka McGuire, you could reasonably conclude that this woman can't tell a lie.  She can't count change.  She is telling you what happened, and what happened was the Defendant held a shotgun to her side and prevented her from getting out of the car.

1  (RT, Volume IV at 98-99.)

2      Movant argues that the government violated his federal constitutional rights in presenting

3  McGuire's testimony, "knowing that it was not true, or should have known that it was actually

4  false." (ECF No. 299 at 12.)  He contends that this error was compounded by the prosecutor's

5  closing argument, set forth above, which "inferred that the government was privileged to a

6  condition Ms. McGuire had that would not permit her to lie and that the government believed she

7  hadn't lied due to affirmatively stating that this incident did occur." (Id. at 12-13.)  Movant

8  further argues that the prosecutor "lied in order to gain sympathy" when he stated that the shotgun

9  touched McGuire's side.  Movant notes that McGuire testified she didn't feel the gun, but only

10  saw it.  (Id. at 13; see also RT, Volume II at 173.)

11      Movant also now informs the court that the presentence report initially contained a

12  reference to movant pointing a weapon at several of the women.  (ECF No. 299 at 13.)  He

13  includes an excerpt from what appears to be the probation officer's response to one of movant's

14  objections to the presentence report which states as follows:

15          Page 8, Paragraph 24: You state witnesses testified to their
           awareness of the guns, for protection, but no one observed the guns
16          pointed at anyone.

17          Probation Officer's Response: With the exception of Shaneka's
           testimony, that was apparently contradicted by other witnesses,
18          none of the victims [sic] statements to the Stockton Police
           Department and the F.B.I. appeared to contain specifics about Moss
19          pointing a weapon at them.  Absent more specific information, I
           have removed the reference of Moss pointing the weapon at Brooks
20          and the other women.

21  (Id.)  Movant argues that the probation officer's election to modify the presentence report

22  supports his claim that the incident described by McGuire during her trial testimony did not

23  occur.  Finally, movant complains that the trial court "made findings that were contrary to that of

24  the [presentence report] and claimed that it found that Movant had in fact pointed this weapon at

25  women to force them into prostituting for him." (Id. at 13-14.)  Again, movant now wishes to

26  claim that his appellate counsel provided him ineffective assistance of counsel by failing to raise

27  all of these issues on appeal.

28  /////

9

1          **2. Analysis**

2          Movant cannot establish the deficient performance component under the <u>Strickland</u>

3     standard with respect to this proposed claim of ineffective assistance of appellate counsel.  As

4     noted above, an appellate advocate provides effective assistance by "winnowing out" a weaker

5     claim and focusing on a stronger claim.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689 ("Judicial scrutiny of

6     counsel's performance must be highly deferential.").  Appellate counsel was not deficient in

7     presenting claims that he believed were stronger than the claim movant now suggests could have

8     been raised on appeal.

9          Even if his appellate counsel was deficient in failing to raise all non-frivolous claims,

10    movant cannot demonstrate prejudice - that he probably would have prevailed on appeal if his

11    counsel had raised these claims of prosecutorial misconduct.  The facts alleged and the evidence

12    offered by movant do not demonstrate that McGuire's testimony about being threatened by

13    movant with the gun in the car was "false."  The fact that neither Brooks nor Vine told the police

14    about the incident that McGuire described, that several other women who were in the car at the

15    same time testified they did not see the incident, or that movant's probation officer decided to

16    remove reference to movant threatening women with a firearm from the presentence report, does

17    not change or undermine this conclusion.  As the prosecutor explained to the jurors at movant's

18    trial, there was conflicting testimony on this point and it was up to them to decide which

19    testimony to believe and which to disbelieve.  The prosecutor also specifically pointed out

20    defense counsel's argument that McGuire was "making up" her story that movant threatened her

21    with his firearm.  There is no evidence before this court that the testimony of any of these

22    witnesses on the subject was "false."  In short, "[i]t is the jurors' responsibility to determine

23    credibility by assessing the witnesses and witness testimony in light of their own experience."

24    <u>United States v. Sanchez-Lima</u>, 161 F.3d 545, 548 (9th Cir. 1998).  The jurors at movant's

25    apparently found McGuire's testimony on this point to be credible.

26         There is also no evidence presented by movant suggesting that the prosecutor knew, or

27    believed, that McGuire's testimony was false.  Rather, the contrary appears to be true.  As

28    respondent points out, the trial judge also stated that he found the testimony of the government

1   witnesses, including McGuire, to be "credible," notwithstanding the fact that some of their

2   testimony appeared to be inconsistent.  (Reporter's Transcript of Sentencing on Appeal, at 6-7.)

3   Again, the jury was fully aware of the conflicting testimony now pointed to by movant and chose

4   to believe McGuire when she stated movant prevented her from leaving the car by showing her

5   his firearm.  Under the circumstances presented here, the fact that the prosecutor elicited

6   McGuire's testimony at trial on this point does not constitute prosecutorial misconduct.

7          Nor has movant presented a colorable claim that the prosecutor improperly vouched for

8   the testimony of McGuire.  The prosecutor's remarks which movant now seeks to claim his

9   appellate counsel should have argued about on appeal did not place the prestige of the

10  government behind witness McGuire through personal assurances of her veracity, or suggest that

11  information not presented to the jury supported McGuire's testimony.  The prosecutor's

12  suggestion to the jurors that they "could reasonably conclude" McGuire was not telling a lie

13  because she "can't count change" was certainly not a suggestion that the government knew about

14  a "condition Ms. McGuire had that would not permit her to lie."  Moreover, the prosecutor's

15  argument to the jury that "the defendant held a shotgun to her side and prevented her from getting

16  out of the car" was a "reasonable inference" from testimony presented at movant's trial.  Gray,

17  876 F.2d at 1417; see also Dubria v. Smith, 224 F.3d 995, 1004 (9th Cir. 2000) ("a prosecutor is

18  free to voice doubt about the veracity of a defendant's story"); United States v. Molina, 934 F.2d

19  1440, 1445 (9th Cir. 1991) (in a case "that essentially reduces to which of two conflicting stories

20  is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying").

21         In sum, movant has failed to state a colorable claim that his appellate counsel rendered

22  ineffective assistance in failing to raise the above-described instances of alleged prosecutorial

23  misconduct on appeal.  Nor can movant establish any prejudice flowing from his appellate

24  counsel's decision not to raise these issues on appeal.  Accordingly, movant's motion to amend

25  his § 2255 motion to add these new claims would be futile and should be denied.

26  /////

27  /////

28  /////

11

**B.  Ineffective Assistance of Appellate Counsel in Failing to Raise a Claim that Movant had the Right to be Sentenced on the Basis of Accurate and Reliable Information**

On appeal, movant's appellate counsel argued that movant's sentence should be set aside because it was "substantively unreasonable."  (ECF No. 242 at 5.)  Appellate counsel argued that the trial court based its sentencing determination "on unreliable or untrue facts."  (Id.)  The Court of Appeals rejected these arguments, reasoning as follows:

> . . . but trial testimony, credited by the jury, showed that, among other things, Moss beat all seven women frequently and gratuitously, beat Brooks into unconsciousness, and made sexual demands that were humiliating and constant.  The district court arrived at a sentence that it believed appropriate after careful consideration of Moss's conduct and criminal history, the Guidelines, and 28 U.S.C. § 3553(a).  We conclude that the sentence was reasonable.

(Id.)

Movant acknowledges that his appellate counsel "argued that the evidence relied upon by the trial court was inaccurate and unreliable."  (ECF No. 299 at 15.)  However, he now seeks to add a claim to his long-pending § 2255 motion that his appellate counsel rendered him ineffective assistance in failing to support that argument "adequately and effectively."  (ECF No. 299 at 14.)  Movant now suggests several additional arguments counsel could have made to "bring to the appellate court's attention the trial court's reliance on incorrect information."  (Id. at 15-18.)  For instance, movant cites to various parts of the record in an attempt to demonstrate that he did not "beat all seven women frequently and gratuitously," as the Ninth Circuit indicated in its opinion.  (Id.)  Movant repeats an argument made by his trial counsel at the sentencing hearing to the effect that several of these women did not testify at trial and there was no other "reliable evidence that they were physically assaulted."  (Id. at 15.)

Movant also argues his appellate counsel should have notified the Court of Appeals that the presentence report in his case was modified to delete reference "to the alleged incident of movant burning Ms. Margaret Hutchinson on the buttocks with a hot clothing iron," and to movant "pointing the weapon at Brooks and the other women."  (Id. at 16.)  Movant further argues his appellate counsel should have informed the Court of Appeals that the trial judge

12

1  erroneously stated at the sentencing proceedings that "the prostitutes who testified" said they

2  were "in constant fear of the defendant, who beat them, pointed a sawed off shotgun at some of

3  them, threatened to kill them and their family if they left him," that "one was even burned with a

4  clothes iron for lying to the defendant," and that McGuire "testified that the defendant pointed a

5  sawed off shotgun at her in the car." (Id. at 16-17; see also Reporter's Transcript of Sentencing

6  on Appeal (September 29, 2006 ) (RTS 9/29/06) at 7, 10.).  Movant claims these statements by

7  the trial judge were not supported by the evidence introduced at his trial.  Movant concludes that

8  the result of the appellate proceedings would have been different had his appellate counsel

9  "adequately and effectively argue[d] that the evidence relied upon by the trial court was

10  inaccurate, unreliable, and materially untrue that violated Movant's Due Process Rights."  (ECF

11  No. 299 at 18.)

12      It is true that "a sentence predicated on material false information denies due process."

13  Jones v. United States, 783 F.2d 1477, 1480 (9th Cir. 1986) (emphasis in original).  However,

14  "due process does not require sentencing information to meet the same rigorous evidentiary

15  standards required at trial."  Id.  In order to prevail on a claim that his sentence was based on

16  materially false sentencing information, a § 2255 movant must allege and establish that the

17  challenged information is "(1) false or unreliable and (2) demonstrably made the basis for the

18  sentence."  (Id.)

19      Here, in his proposed new ineffective assistance of appellate counsel claim movant fails to

20  make a colorable showing that any material information relied on by the trial court in sentencing

21  him was false or unreliable or that it demonstrably formed the basis of the sentence imposed in

22  his case.  The record reflects that the sentencing judge relied on many factors in reaching

23  movant's sentence and took into consideration the relative strengths and weaknesses of the trial

24  testimony.  (RTS 9/29/06.)  In affirming his judgment of conviction and sentence on appeal, the

25  Ninth Circuit also reached the conclusion that the sentence imposed was a fair one.  Movant can

26  present no colorable claim that there is a reasonable probability that the result of the appellate

27  proceedings would have been different if his appellate counsel had somehow argued more

28  "adequately and effectively" that his sentence was based on inaccurate and unreliable

1    information.  Accordingly, movant's motion to amend his § 2255 motion to add this additional

2    claim of ineffective assistance of counsel should be denied because any such amendment would

3    be futile.

4        **C.  Ineffective Assistance of Appellate Counsel in Failing to Challenge Lack of**

5    **Special Jury Verdict Based on Theory of Defense**

6        Movant also seeks to amend his § 2255 motion to add a claim that his appellate counsel

7    rendered ineffective assistance in failing to challenge the trial court's refusal to give a special

8    verdict form "based on movant's defense theory."  (ECF No. 299 at 19.)

9        Movant was charged in Counts One through Four of a Fourth Superseding Indictment

10   with a violation of 18 U.S.C. § 1591(1)(1)(c), Sex Trafficking of Children or by Force, Fraud, or

11   Coercion.  Movant's jury was instructed that, with respect to Counts One through Four, the

12   prosecution was required to prove beyond a reasonable doubt that:

13           First, the defendant recruited, enticed, harbored, transported,
     provided, or obtained by any means a person identified as [    ]";

14           Second, the defendant did so knowing that force, fraud, or coercion
     would be used to cause [    ] to engage in a commercial sex act; or

15           knowing that [    ] had not attained the age of 18 years, she would
     be caused to engage in a commercial sex act, with all of you

16           agreeing on the 'force, fraud, or coercion' aspect, the 'age' aspect,
     or both."

17

18   (ECF No. 147 at 19-26.)  Movant argues that "there was no unanimous guilty verdict on either the

19   'force, fraud, or coercion' prong or the 'age' prong and Movant contends that there was evidence

20   to refute both elements.  And thus, he should've been entitled to his defense theory."  (ECF no.

21   299 at 20.)

22       The record reflects that movant's trial counsel filed a proposed verdict form which

23   required the jury, with respect to Counts One through Four, to specifically find in a section

24   entitled "special verdict" that "a guilty verdict is based on a finding of 'force, fraud or coercion'

25   or was based "on a finding that Will Moss, Jr., did not know [    ] was under the age of 18

26   years."  (ECF No. 138 at 1-2.)  The verdict forms given to the jury did not include this "special

27   verdict" section with respect to Counts One through Four.  (ECF No. 149.)

28   /////

1    Respondent argues that the verdict forms were sufficient in light of the related jury

2    instructions, which "clearly defined the alternative means of committing the alleged crimes, and

3    specifically required unanimity as to any findings regarding those means."  (ECF No. 304 at 10.)

4    Respondent asserts that given the court's unanimity instructions on Counts One through Four,

5    "the verdict form was sufficient, and any argument to the contrary would be meritless."  (Id.)

6        In response to respondent's arguments, movant states:

7            Movant contends that the jury instructions pertaining to his
             convictions under § 1591 Counts 1-4 was defective in allowing the
8            jury to find him guilty unanimously of all the essential elements of
             the statute beyond a reasonable doubt.  Respondent argues that "the
9            jury instructions clearly defined the alternative means of
             committing the alleged crimes, specifically required unanimity as to
10           any findings regarding those means."  (ECF No. 304 at 10).  But,
             however, Movant contends that the instructions given allowed the
11           jury to make split findings: ie., several jurors could have found the
             'force, coercion, or fraud' requirement was met and the remaining
12           jurors could have found the 'age' requirement was proven. "with all
             of you agreeing on the force, fraud, or coercion aspect, the age
13           aspect, or both" (Jury Instructions RT. At 156).  Movant contends
             that this instruction did not permit the jury to find him guilty
14           beyond a reasonable doubt of first the 'age prong unanimously or
             second the 'force, coercion, or fraud' prong unanimously or either
15           both prongs together individually and unanimously: e.g., to find
             both unanimously 12 jurors would have had to find the first prong
16           and as well as 12 jurors would have had to find the second prong
             beyond a reasonable doubt.

17

18   (ECF No. 309 at 16-17.)  In short, movant argues that "there was no unanimous findings by the

19   jury to either of the prongs of his convictions under § 1591 and, thus, all the elements of the

20   statute had not been proven beyond a reasonable doubt."  (Id. at 18.)  He contends that

21   "regardless of any proffered evidence he was still entitled to his defense theory and his counsel

22   was ineffective for failing to raise this argument on appeal."  (Id.)

23       After a review of the record, including the jury verdict form proposed by the defense, the

24   jury verdict form that was given to the jury, and the jury instructions as given with respect to

25   Counts One through Four, the undersigned s concludes that movant cannot demonstrate any

26   prejudice with respect to this proposed new claim of ineffective assistance of appellate counsel.

27   Under the circumstances of this case, there is no reasonable probability movant would have

28   prevailed on an appellate claim that the trial court abused its discretion in refusing to give his

15

1    suggested "special jury verdict form."  As explained above, appellate counsel has no obligation to

2    raise meritless arguments on a client's behalf.  Strickland, 466 U.S. at 687-88; Miller, 882 F.2d at

3    1434.  Appellate counsel was entitled to raise claims on appeal that he believed had more merit

4    than this claim suggested by movant.  Accordingly, movant's motion to amend the § 2255 motion

5    to add this claim should be denied as futile.

6    **IV.  Conclusion**

7            For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's motion to

8    amend his § 2255 motion to add three additional claims (ECF No. 299) be denied.

9            These findings and recommendations are submitted to the United States District Judge

10   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11   after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14   shall be served and filed within fourteen days after service of the objections.  Failure to file

15   objections within the specified time may waive the right to appeal the District Court's order.

16   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

17   1991).  In his objections petitioner may address whether a certificate of appealability should issue

18   in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

19   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

20   enters a final order adverse to the applicant).

21   Dated:  August 25, 2015

22

23   _____
     DALE A. DROZD
24   UNITED STATES MAGISTRATE JUDGE

     DAD:8:
25   Moss550.amend

26

27

28

                                                    16