1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,              No.  2:03-cr-0550-WBS-EFB P

11                 Respondent,

12        vs.                              ORDER AND
                                           FINDINGS AND RECOMMENDATIONS
13   WILL MOSS, Jr.,

14                 Movant.

15

16          Movant, Will Moss, Jr. (hereinafter "Moss" or "movant"), a federal prisoner moves to

17   vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  Following a jury trial,

18   Moss was convicted of four counts of sex trafficking of children by force, fraud or coercion in

19   violation of 18 U.S.C. § 1591(a)(1); one count of coercion and enticement for prostitution in

20   violation of 18 U.S.C. § 2422(a); two counts of interstate transportation of a minor with intent to

21   engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a); one count of possession of

22   a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A); three

23   counts of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1);

24   and one count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).  ECF

25   No. 188 at 2.  He now seeks post-conviction relief on the following grounds: (1) his trial and

26   appellate counsel rendered ineffective assistance; and (2) the court should vacate his conviction

27   ─────────────────────

28   [1]  This motion was assigned, for statistical purposes, civil case number No. 2:11-cv-2841
     WBS EFB P.

                                              1

on Count 8 because neither 18 U.S.C. § 1591 nor 18 U.S.C. § 2423(a) is a crime of violence within the meaning of 18 U.S.C. § 924(c)(3).  ECF No. 354.

Moss also filed a motion for default judgment (ECF No. 284), a motion to amend his § 2255 motion to add an additional claim for relief based on *Alleyne v. United States*, ___U.S.___, 133 S. Ct. 2151 (2013) (ECF No. 280), and a motion to strike respondent's opposition to his motion to amend (ECF No. 290).[2]  Given that this action now proceeds based solely on the third amended motion to vacate (ECF No. 354) – wherein movant was directed to raise all claims he wished to pursue (ECF No. 352) - these older motions will be denied as moot.

An evidentiary hearing was ordered as to one of Moss' claims, i.e. that his trial counsel rendered ineffective assistance during the plea bargaining process.  Counsel was appointed to represent Moss for the purposes of proceeding with that evidentiary hearing.  The hearing was held on August 9, 2016, and Moss was represented by attorney Barry Morris.  The United States was represented by Assistant United States Attorneys Michael Beckwith and Owen Roth.  After the testimony, the court heard oral argument and directed supplemental briefing, which has been completed.  The court now issues its findings and recommendations as to all of the issues raised in Moss' § 2255 motion.

For the reasons set forth below, and upon careful consideration of the record and the applicable law, it is recommended that Moss' § 2255 motion be denied.

**I.  Procedural Background**

On June 21, 2007, after a jury trial, Moss was convicted of the various offenses described above as charged in the indictment.  ECF No. 188 at 2.  He was sentenced by United States District Judge Edward J. Garcia, who imposed a total term of 480 months in the custody of the United States Bureau of Prisons, to be followed upon his release from imprisonment by a 120 month term of supervised release.  ECF No. 184.

/////

_____

[2]  These motions were initially denied on January 20, 2015 in an order and findings and recommendations.  ECF No. 293.  However, that order and recommendation was subsequently vacated.  ECF No. 314.  Consequently, the court treats these motions, as well as the order to show cause (ECF No. 283), as active.

Moss filed a timely notice of appeal from his judgment of conviction, ECF No. 183, and by order dated May 18, 2010, the United States Court of Appeals for the Ninth Circuit affirmed his conviction on all counts except counts 11 and 12, in which he was charged with being a convicted felon in possession of a firearm. Those two counts were remanded for vacatur of one of the counts in order to avoid multiplicitous convictions. ECF No. 242.[3] On remand, the trial court vacated Moss' conviction on count 12 as well as the special assessment that had been imposed in connection with that count. ECF Nos. 248, 249. Moss' petition for certiorari in the United States Supreme Court was denied on November 1, 2010. ECF No. 250 at 12.

Moss filed his initial pro se § 2255 motion on October 26, 2011, in which he raised three grounds for federal habeas relief, all claiming ineffective assistance of counsel. ECF No. 250. On January 20, 2015, the then-assigned magistrate judge issued an order and findings and recommendations which, *inter alia*, recommended that Moss' § 2255 motion be denied. ECF No. 293. Moss filed objections to that recommendation, ECF No. 313, and after reviewing those objections, the then-assigned magistrate judge issued an order which vacated the findings and recommendations and scheduled an evidentiary hearing on one of Moss' claims: that his trial counsel rendered ineffective assistance during the plea bargain process. ECF No. 314. That same order also appointed counsel for Moss for the purpose of participating in the evidentiary hearing and stated that "new findings and recommendations on movant's § 2255 motion will be issued after the evidentiary hearing has been completed." *Id.* at 2.[4] The evidentiary hearing took place on August 9, 2016.

On August 30, 2016, Moss, proceeding through counsel, filed a third amended § 2255 motion, which includes all of the claims contained in his original motion and adds an additional claim based on the recent United States Supreme Court decision in *Johnson v. United States*, 135 S.Ct. 2251 (2016). ECF No. 354. With regard to the claims contained in his original § 2255

---

[3] On appeal, the government conceded error with respect to that issue.

[4] On March 23, 2015, Moss filed a motion for leave to amend his § 2255 motion to add three additional claims of ineffective assistance of appellate counsel. ECF No. 299. That motion was denied by order dated November 6, 2015. ECF No. 316.

1  motion, Moss has added no new arguments but has elected to rely on his original § 2255 motion

2  "as is." *Id.* at 1 n.1. The government filed a response to the third amended motion on September

3  13, 2016, and movant filed a reply on September 20, 2016. ECF Nos. 356, 360. This matter

4  proceeds on movant's third amended motion.

5  In its response, the government argued that this court should "adopt" the original findings

6  and recommendations with respect to all of movant's original claims, with the exception of his

7  claim of ineffective assistance of counsel during the plea bargain process. The government "asks

8  the Court to consolidate [the] prior findings and recommendations with its rulings on the IAC

9  claim (during the plea bargain process) and the *Johnson* claim." ECF No. 356 at 4. In his reply,

10 movant argued that he should be allowed to expand his arguments on his original claims. In an

11 order filed September 26, 2016, the parties were instructed that the government could elect to rely

12 on its original answer with respect to movant's original claims and that no traverse was necessary

13 with respect to those claims, but that both parties could, if they wished, elaborate on the

14 arguments already before the court. ECF No. 361.

15 After the evidentiary hearing was concluded, Moss filed a memorandum in support of his

16 § 2255 motion. ECF No. 362. The government filed a post-hearing memorandum and Moss filed

17 a reply. ECF Nos. 364, 367.

18 **II. Factual Background**

19 The pertinent facts underlying Moss' conviction were described in Judge Shubb's decision

20 denying Moss' pre-trial motion to suppress evidence.[5] That decision set forth the following

21 description of facts pertaining to Moss' crimes of conviction, his arrest, and the subsequent search

22 of his vehicle.

23      Stockton police officers began their investigation of Will Moss, Jr.
        in July 2003. By December 2003 they had interviewed several
24      witnesses, gathered documentary evidence, and had otherwise
        corroborated the statements of witnesses who identified the
25      defendant as a pimp who with the assistance of Vinnie Brooks had
        moved women, including at least one minor, inside the State of
26      California and to at least Las Vegas, Nevada for the purposes of

27

―――――――――――――

[5] The case was reassigned from Judge Shubb to Judge Garcia for trial and subsequent
28 proceedings on May 23, 2006. ECF No. 100.

4

prostitution.

On December 12, 2003, between approximately 3:30 and 4:00 p.m., San Joaquin County Probation Officer James Christensen called Stockton Police Department Sergeant Kenneth Praegetzer and advised that while he was driving in the area of Sierra Nevada Street and Wilson Way in Stockton he observed three or four black females on the street. He said the women stood out to him because they were younger and dressed in a flashy manner, including high heels and tight, short clothing in contrast to the typical dress, age, and demeanor of local prostitutes on Wilson Way.

Sgt. Praegetzer relayed this information to Officers James Chraska, Jose Lopez, Phillip Thompson, and Jonathan Kislingbury for further investigation. Those officers proceeded to the Wilson Way area, which was well known for prostitution activity. Officer Kislingbury observed four females walking on Wilson Way who met the description he had been provided. He observed a white female, later identified as Stephanie Bednarik, walking with a black female, later identified as Summer Sawyer, and then saw two additional black women, later identified as Allison Carruth and Margaret Hutchinson, walking a few blocks south on Wilson Way. Officer Kislingbury recognized Summer Sawyer as a prostitute with whom he had dealings in the past.

The officers observed the activities of the women in the prostitution area. Officer Kislingbury watched Carruth and Hutchinson wave at traffic and motion cars to the side of the road. They waved at three vehicles with male drivers and called out to them to turn around. As Officer Kislingbury stopped at the stop sign at the intersection of Flora Street and Wilson Way to turn onto Wilson Way, Carruth and Hutchinson were only about twenty-five feet away walking southbound on Wilson Way. As he turned onto Wilson Way, Hutchinson called out to him and said, "Hey, don't go, come back." Officer Kislingbury replied, "hello" and relayed this information to the other officers.

Meanwhile, Officers Chraska and Lopez observed Carruth and Hutchinson loitering in the area of the Wienerschnitzel. After Hutchinson waved at them, Officer Chraska pulled into the restaurant parking lot in the unmarked police car. Carruth and Hutchinson then approached the car. Carruth pushed her chest towards Officer Lopez and asked him to touch her. Hutchinson said hello to Officer Chraska and then pushed her breasts towards the open window and asked him to touch her.[6] When Officer Chraska told her he wanted to have sex with her, she replied, "[w]ell, how much you got." Officer Chraska told her he had sixty dollars, but did not touch her. At that point Carruth walked towards Hutchinson and told her to leave.

---

[6] The fact that the women asked the officers to touch them was consistent with the approach taken by prostitutes who want to avoid getting arrested and know that law enforcement officers are not permitted to touch them.

The officers then arrested Carruth and Hutchinson for loitering for the purposes of prostitution. They both indicated that their home address was 5419 Tropicana Boulevard, apartment #1207, an address known to the officers as the address of defendant Moss. In addition, Carruth was using a Boost cell phone, known to be commonly used by prostitutes, that contained numbers for "Slim," "Tachi," and "Cinnamon." Those names were familiar to the officers because the Vice Unit had an ongoing investigation of pimping and pandering against Will Moss, Jr. who is also known as Slim. Tachi was known to be a nickname for co-defendant Vinnie Brooks.

After Carruth and Hutchinson were taken to the police station, Officer Kislingbury pulled out of the Wienerschnitzel parking lot and noticed both Sawyer and Bednarik on the sidewalk just south of the restaurant talking to some other women on the street. It appeared to him that Sawyer and Bednarik were being warned by other prostitutes on the street that law enforcement had made contact with Carruth and Hutchinson. Sawyer and Bednarik appeared nervous, changed the direction they were walking, entered the Wienerschnitzel, and sat down. Officer Kislingbury observed Sawyer talking on her cell phone while she was at the table.

About twenty minutes later Carruth and Hutchinson left the Wienerschnitzel, followed by Officer Kislingbury and others. As the women walked westbound on Fremont Street to American Street, they got into a blue Cadillac, four dour [sic], license plate number 2ZJX115. Accordingly [sic] to Officer Kislingbury, the women did not flag the car down, but got into it as if they knew the driver. The vehicle was familiar to Officer Kislingbury and others in the unit as being registered to Will Moss, Jr. Officer Kislingbury drove alongside the Cadillac and confirmed that defendant Moss was the driver.

Shortly thereafter defendant was pulled over and arrested for pimping and pandering prostitution. An inventory search of the car was completed before it was towed from the scene. During the inventory search officers found a computer, handgun, and shotgun ammunition.

ECF No. 67 at 2-5. In an exhibit attached to Moss' motion to suppress evidence, Officer Kislingbury reported his participation and observations, stating that:

S-Moss drove onto the cross-town freeway (E/B Hwy 4) where Ofc. Johansen and Sgt. Will conducted a traffic stop on S-Moss. S-Moss pulled over in the center divider just east of Filbert St. S-Moss was ordered out of the vehicle and would not exit. S-Moss finally exited the car cussing and saying the police should have been using the loud speaker. S-Moss was taken into custody by Sgt. Will. Refer to Sgt. Will's subsequent report for details.

S-Moss was advised he was under arrest for pimping and pandering. Prior to conducting a vehicle inventory search of the vehicle due to towing the vehicle, I asked S-Moss if there was

anything illegal in the vehicle, which he said there wasn't. I asked S-Moss if I could search the vehicle, which he said "Fuck no you can't search my vehicle".

During the inventory search of the vehicle contents, a loaded Raven Arms .25 cal handgun was found in the rear pouch of the front passenger's seat. The serial number had been removed from the gun. There was also a laptop computer in the rear passenger seat, misc. clothing and hygiene products in the trunk. We also located a red 12 gauge shotgun shell under the spare tire in the trunk. I requested FET (Field Evidence Technician) to respond for photographs of the vehicle and items. FET Taylor responded to the scene and took photographs. The handgun was recovered by Ofc. Lopez and secured. I recovered the shotgun shell and laptop computer and turned over to Ofc. Lopez for booking.

ECF No. 60-1 at 11-12.

## III. Law Applicable to Motions Pursuant to 28 U.S.C. § 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). Under § 2255, the sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *Davis v. United States*, 417 U.S. 333, 344-45 (1974); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346. *See also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

## IV. Movant's Claims

### A. Ineffective Assistance of Counsel

Moss claims that his trial and appellate counsel rendered ineffective assistance throughout the entire criminal trial and appellate process in this case. He divides his ineffective assistance

7

claims into four areas: pretrial, trial, sentencing, and appeal. ECF No. 250 at 4-8. After setting forth the applicable legal principles, the court will analyze each aspect of Moss' claims in turn below.

### 1. <u>Law Applicable to Claims of Ineffective Assistance of Counsel</u>

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 787-88 (2011) (quoting *Strickland*, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669. *See also Richter*, 131 S. Ct. at 789 (same). Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and alterations omitted).

/////

/////

/////

The *Strickland* standard applies to claims of ineffective assistance involving counsel's advice during the plea bargain process. *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1404-05 (2012); *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2009); *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985); *Nunes v. Mueller*, 350 F.3d 1045, 1052 (9th Cir. 2003). To prevail on such a claim, a petitioner must demonstrate "'gross error on the part of counsel,'" *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *McMann v. Richardson*, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" *Id.* The relevant question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771.

As a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1408 (2012). Trial counsel is also to "advise a client to enter a plea bargain when it is clearly in the client's best interest." *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003). "[W]here the issue is whether to advise the client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir.1981)). In short, trial counsel must give the defendant sufficient information regarding a plea offer to enable him to make an intelligent decision of whether to accept or reject it. *Id.* at 881.

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where a plea offer has lapsed or been rejected because of trial counsel's deficient performance, the defendant must demonstrate a reasonable probability he would have accepted the plea offer had he been afforded effective assistance of counsel. *Frye*, 132 S.Ct. at 1409.
/////

Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.*

### 2. **Pretrial Proceedings**

Moss' first claim is that his trial counsel rendered ineffective assistance during the pretrial proceedings in this case. ECF No. 354 at 1-2.[7] His claim in this regard is stated, in full, as follows:

Petitioner's counsel failed to: (1) move for dismissal based on the violation of Petitioner's statutory and constitutional rights to a speedy trial; Petitioner was continuously incarcerated almost 3 years prior to trial, with approximately 910 non-excludable days expiring; (2) properly argue for suppression; after the women were removed from Petitioner's car, there was no reason to believe that contraband or evidence regarding alleged prostitution would be found in Petitioner's vehicle; (3) inform Petitioner of the true risks associated with proceeding to trial versus pleading guilty – had Petitioner been properly advised, he would have pled guilty instead of proceeding to trial.

*Id.* Moss has not supported claims (1) and (2) with argument, citations to legal authority, or citations to the trial record. As such, these claims are subject to dismissal as unduly vague and conclusory. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir.1989) (vague or conclusory claims without supporting factual allegations warrant summary dismissal of § 2255 motion); *see also Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("It is well-settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'")). In addition, in his objections to the original findings and recommendations in this matter, Moss appeared to withdraw his claims concerning his right to a speedy trial and the filing of a suppression motion. ECF No. 296 at 3.

---

[7] Moss' third amended section 2255 motion was filed by counsel. It attaches the initial, *pro se* motion (ECF Nos. 250, 354-1) as an exhibit, however, and indicates an intent to incorporate its content.

However, in an abundance of caution the court addresses those two claims on the merits. As discussed below, the record does not support any of Moss' claims that he received ineffective assistance of counsel during the pretrial proceedings in this action.

### a. Speedy Trial

Moss claims that the trial court violated his right to a speedy trial because he was "continuously incarcerated almost 3 years prior to trial, with approximately 910 non-excludable days expiring." ECF No. 354-1 at 4. In response, the government argues that "based on the docket, between December 19, 2003, and June 13, 2006 (the first day of trial), only 26 of 70 non-excludable days passed." ECF No. 268 at 4. That argument point is supported by an accompanying chart and is consistent with the court's reading of the docket in this action.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST., Amend. VI. In assessing a claim that one's constitutional right to a speedy trial has been denied, the court must weigh four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). *See also McNeely v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003); *United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986). No one of these four factors alone is either necessary or sufficient to support a finding that there has been a deprivation of the constitutional right to a speedy trial. *McNeely*, 336 F.3d at 826. Rather, the various factors are related and must be considered together. *Barker*, 407 U.S. at 533. However, "no showing of prejudice is required when the delay is great and attributable to the government." *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992).

/////

/////

/////

/////

The Supreme Court has observed:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

*Barker*, 407 U.S. at 530. In this regard, depending on the nature of the charges, courts have generally found post-accusation delay "presumptively prejudicial" when it begins to approach one year. *Doggett*, 505 U.S. at 652, n.1; *see also McNeely*, 336 F.3d at 826 (three-year delay was presumptively prejudicial); *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (22-month delay between the filing of the first superseding indictment and the trial date was presumptively prejudicial but did not weigh heavily in defendant's favor because it was not excessively long); *United States v. Aguirre*, 994 F.2d 1454, 1457 (1993) (finding that "a five year delay is long enough to trigger a further look," but concluding that even the five-year delay in that case did not deprive the defendant of his constitutional right to a speedy trial when all of the *Barker v. Wingo* factors were balanced).

The Speedy Trial Act was intended, in part to give "'real meaning to [the] Sixth Amendment right' of an accused individual to a speedy trial." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1085 (9th Cir. 2004) (quoting H.R. Rep. No. 93–1508, at 7402, 7404 (1974)). The Act provides that trial shall commence no later than seventy days from indictment or the defendant's first appearance in court, whichever is later. 18 U.S.C. § 3161(c)(1)). However, certain delineated periods of delay shall be excluded in computing the time within which the trial must commence. *See* 18 U.S.C. § 3161(h) (listing various periods of delay resulting from other proceedings concerning the defendant, such as time attributable to the filing and deciding of pretrial motions, which constitute excludable periods of delay). The Speedy Trial Act mandates dismissal of the indictment upon defendant's motion if the seventy day limitations period is exceeded. 18 U.S.C. § 3162(a)(2); *see also United States v. Morales*, 875 F.2d 775, 777 (9th Cir. 1989). The failure of the defendant to move for dismissal prior to trial constitutes a waiver of the right to dismissal under this section. 18 U.S.C. § 3162(a)(2); *see also United States*

12

*v. Medina*, 524 F.3d 974, 980 (9th Cir. 2008) ("If the defendant is not brought to trial within the 70–day period mandated by the Speedy Trial Act (subtracting all properly excludable periods of delay), then the defendant may move for a dismissal of the indictment.").

As noted above, in this case Moss has provided no specific factual support for his claim that the delay in bringing his case to trial violated the Speedy Trial Act. His bare, unsupported assertion that 910 non-excludable days lapsed between the date of his arraignment and trial is insufficient to support this claim for relief. The court's review of the docket in this action leads to the same conclusion reached by respondent: that due to excludable time findings, only 26 non-excludable days passed between Moss' arraignment and his trial. Accordingly, Moss is not entitled to relief on a claim based on the Speedy Trial Act.

With respect to his right to a speedy trial under the Sixth Amendment, Moss has not demonstrated that his calculation regarding the length of delay in bringing his case to trial is correct or that respondent's calculation is incorrect, that the government was more to blame than the defense for any delay in bringing him to trial, that he asserted his right to a speedy trial before the trial court, or that he suffered any prejudice as the result of delay. *Doggett*, 505 U.S. at 651. Moss has also failed to come forward with any evidence that his trial date was continued over the objection of his counsel or any other defense counsel, that any delay in bringing the case to trial was for any improper purpose, or that the prosecution improperly sought to lengthen the proceedings against Moss. *Cf. United States v. Marion*, 404 U.S. 307, 325 (1971) (it would be improper for the prosecution to intentionally delay in order "to gain some tactical advantage over [defendants] or to harass them"); *McNeely*, 336 F.3d at 827 ("deliberate attempt to delay proceedings to hamper the defense counts heavily against the government"). There is no evidence before the court supporting any suggestion that the prosecution intentionally or improperly delayed the proceedings against Moss in order to seek a tactical advantage over him. Accordingly, Moss has failed to demonstrate that delay in bringing his case to trial violated his right to a speedy trial under the Sixth Amendment.

Because Moss has failed to show any violation of his statutory or constitutional right to a speedy trial, he has also failed to demonstrate either deficient performance or prejudice on the

13

part of his trial counsel in failing to file a motion to dismiss or otherwise raise an objection before the trial court on speedy trial grounds.  Accordingly, Moss is not entitled to relief on this aspect of his ineffective assistance of counsel claim.

### b. Motion to Suppress

Moss' next claim is that his trial counsel rendered ineffective assistance in failing to "properly argue for suppression" because "after the women were removed from Petitioner's car, there was no reason to believe that contraband or evidence regarding alleged prostitution would be found in Petitioner's vehicle."  ECF No. 354-1 at 4.  For the reasons set forth below, this claim lacks merit and should be rejected.

The record reflects that Moss' trial counsel filed a "Motion to Suppress Evidence" on April 12, 2005.  ECF No. 60.  Therein, counsel argued that Moss' warrantless arrest was not supported by reasonable suspicion or probable cause, as required by the Fourth Amendment, and that all evidence obtained as a result of that arrest, including two subsequent searches of Moss' vehicle and a search of his residence, should be suppressed as the fruit of the poisonous tree.  *Id*. Judge Shubb denied that motion to suppress evidence by order dated June 3, 2005, finding that the police had probable cause to arrest Moss on suspicion of pimping and that the initial limited search of his vehicle was justified as "both an inventory search and as a search incident to arrest." ECF No. 67 at 6.  The trial court also concluded that the arrest of Moss' two passengers pursuant to outstanding warrants for prostitution justified a search of the car incident to those arrests.  *Id*. at 6-7.  The court therefore concluded that the search of Moss' car was permissible, even after the two prostitutes had been arrested and removed from the vehicle.  *Id*.

Moss has failed to demonstrate either deficient performance by his trial counsel in connection with the motion to suppress evidence brought on Moss' behalf or prejudice resulting therefrom.  Defense counsel's arguments in support of the motion to suppress evidence were competent and, in fact, were consistent for the most part with the arguments Moss now suggests his counsel should have raised.  Further, Moss has failed to show that the result of the proceedings would have been different had his trial counsel argued differently that the police had no lawful cause to search Moss' vehicle after the women were arrested and removed from the car.

14

The trial judge specifically rejected that argument in denying the motion to suppress evidence, finding that "because not only defendant was arrested but both of his passengers were also arrested for outstanding warrants, their arrests also justified a search of the car that would have uncovered the gun and other evidence." *Id*. at 6-7. As noted by respondent, "no amount of additional argument was likely to change that outcome." ECF No. 268 at 7. Accordingly, Moss is also not entitled to relief with respect to this aspect of his ineffective assistance of trial counsel claim.

### c. Advice Regarding Risks of Going to Trial

In his next ground for relief, Moss argues that his trial counsel rendered ineffective assistance during the plea bargain process. Specifically, Moss claims that his trial counsel rendered ineffective assistance in: (1) failing to advise him of the risk that if he rejected the government's plea offer and was convicted after a trial, the trial court had the power to depart upward from the sentencing guidelines; (2) failing to advise him that he could get a sentence of 40 years in prison based on the pending charges; and (3) failing to address his concerns that admissions contained in a guilty plea to the federal charges could impact a criminal case pending against him in state court. ECF No. 367.

As set forth above, in his original habeas petition Moss argued, in full, that his trial counsel improperly failed to "inform Petitioner of the true risks associated with proceeding to trial versus pleading guilty." ECF No. 354-1 at 4.

In answering this claim, respondent relied upon the declaration of Moss' trial counsel. ECF No. 268-2. Therein, trial counsel outlines his extensive experience as a criminal defense attorney and declares that he attempted to persuade Moss numerous times to accept the government's pre-trial plea offer, which called for Moss to receive a 12 year sentence of imprisonment. *Id*. Counsel further declares that he hired an expert sentencing consultant to calculate the likely sentence Moss was facing if he went to trial and was convicted. *Id*. at 6. After learning from this expert that Moss could receive up to between 30 to 40 years in prison if convicted following a trial, defense counsel had a meeting with Moss wherein he discussed the government's plea offer calling for a 12 year sentence, advised Moss of his possible sentencing

exposure following trial, and informed Moss that if he did not accept the pending plea offer the government might elect to file a superseding indictment to add even more charges against him. *Id*. at 6-7. Trial counsel declared that he also told Moss the evidence against him was "overwhelming" and that counsel believed Moss "would be convicted of most if not all of the charges and sentenced extremely harshly." *Id*. at 6. Subsequently, counsel had another meeting with Moss at which he again urged him to accept the government's plea offer. *Id*. at 7. Counsel also declares that he met with Moss' mother and asked her to exert her influence to persuade Moss to accept that offer. *Id*. Counsel states that Moss, nonetheless, adamantly refused to accept the offer and insisted upon going to trial. *Id*. at 6-7.

In his objections to the January 20, 2015 findings and recommendations, Moss greatly expanded his allegations in support of his claim that his trial counsel rendered ineffective assistance during the plea bargain process. In those objections, Moss "denies" his trial counsel's recitation of the facts surrounding the government's plea offer, contained in counsel's declaration described above. ECF No. 296 at 4. He asserts that the government offered to recommend a prison sentence of 12 years, 7 months if he would agree to plead guilty to "some of the charges and that movant kidnapped one of the girls from Stockton, CA; pointed a gun at a mentally disable [sic] woman; burned a woman on the buttocks with a hot clothing iron; and forced a woman into anal intercourse." *Id*. at 3-4. Moss explains that he "realized that many of the counts he could not beat and he desperately wanted to take a plea." *Id.* at 4. To that end, he told his trial counsel he would accept the government's offer "at the high end of the guideline range" if counsel would ask the government to "remove the conduct regarding movant pointing a gun at a mentally disabled woman; kidnapping; burning a woman on the buttocks with a hot iron; and forcing a woman to engage in anal sex." *Id.* Moss states that his trial counsel was unable to convince the prosecution to remove any of these allegations. *Id.*

Moss further explains that the defense investigator had obtained "critical information for the defense" but that when this information was given to trial counsel, counsel "claimed that it would not be helpful." *Id.* at 5. Moss states that at this point he "became desperate" and told his trial counsel to "tell the government that he'll accept a 15 year plea if the kidnapping; pointing a

16

gun allegations would be removed." *Id.* He explains that he had state criminal charges pending against him and did not want to admit to "kidnapping anyone." *Id.* at 5-6. However, according to Moss, his trial counsel never responded to his request to convey this offer to the government. *Id.* at 6.

Moss also states that his trial counsel obtained a report from an "expert sentencing consultant," but when the consultant's calculation of petitioner's sentencing guideline range was higher than the government's estimate, Moss lost faith in his trial counsel. *Id.* Moss states that he complained to the defense investigator about his trial counsel's "actions," asked the investigator whether trial counsel had ever conveyed Moss' requests about the plea offer to the government, and told the investigator that he would accept a "15 year plea." *Id.* According to Moss, the investigator stated that "she didn't believe [trial counsel] was listening to movant." *Id.* at 6-7. Moss states that he "has at all times asserted that he wanted a plea contrary to [trial counsel's] assertion." *Id.* at 7.

Finally, Moss asserts that his trial counsel failed to advise him of the sentencing consequences of proceeding to trial. Specifically, he states that he had "never been told that he would be exposed to additional enhancements outside of the aggravated enhancements that the government and [trial counsel's sentence expert] had already employed to reach their calculation determinations." *Id.* He also states that he was not informed he would be "exposed to an upper departure/variance sentence until after he was found guilty," and that "the jury would not have to find that he committed certain aggravated conduct outside of his prostitution ring involvement activities." *Id.* at 8. Moss informs the court that he believed his maximum sentence was "between 19-29 years." *Id.* He further states that he "through his counsel believed if he fought the enhancements that the government had initially outlined in its guideline calculation that he would not nearly be exposed to the top end guideline calculation of 29 years." *Id.* at 8-9.

Moss states that if he had been fully advised of "the true risk of going to trial i.e. the upper departures/variance sentence he received outside of what the government's penalty it initially stated it intended to obtain," he would have pled guilty instead of going to trial. *Id.* at 9.

/////

### i. **Evidentiary Hearing Testimony**

Barnadette Banks, movant's mother, was the first witness to testify at the evidentiary hearing. ECF No. 355 at 5. Banks testified that after Moss was arrested on the charges for which he was convicted, he told her that he had "been offered a plea" and that he wanted to plead guilty if the prosecutor would "take off the kidnapping charges out of Stockton." *Id.* at 6. According to Banks, Moss did not want "a deal that involved admitting to the kidnapping" (*id.* at 8) and told Banks he was concerned that if he admitted to committing a kidnapping in federal court, state authorities could later use that admission to charge him with kidnapping and he could receive "life in prison." *Id.* at 7, 8. Banks said she was aware that criminal charges were pending against Moss in state court, *id.,* and that Moss never told her that he "didn't want to take a deal." *Id.* at 8. Banks also testified that she never had any conversations with attorney Karowsky about whether or not Moss should accept a plea offer. *Id.* at 9, 11. She testified that she did not know what Mr. Karowsky thought about the plea because she didn't talk to him about it. *Id.* at 12.

Moss also testified. He stated that Mr. Karowsky represented him for about one year. *Id.* at 15. Moss recounted that in addition to the charges pending against him in federal court, he had a pending state criminal case in San Joaquin County on charges of "pimping and pandering by encouragement, a weapons charge and obstruction of justice." *Id.* at 15-16. Moss said he was arrested on the state charges approximately one week before being arrested on the federal charges. *Id.* at 16. Given the fact that he had a pending state criminal case, Moss was concerned that he "could be prosecuted in the state charge as – from admitting to anything in the federal case." *Id.* at 16-17. In other words, he was worried that he might "admit something in the federal case that could later be used against [him] in the state case." *Id.* at 17. Specifically, he was concerned that the state would amend the pandering by encouragement charge to a kidnapping charge. *Id.*

Moss testified that he told Karowsky he wanted "to take a deal, take a plea offer." *Id.* He explained that Karowsky presented him with the government's plea offer and explained that "in order to plead guilty to the charges in federal court [he] would have to admit a kidnapping that wasn't charged in federal court." *Id.* at 18, 19. He was worried this admission could negatively

impact his case in San Joaquin County. *Id.* He stated that he was never presented with a plea offer that did not require him to admit to a kidnapping. *Id.* Rather, it was his understanding that "any plea agreement that would be worked out in federal court required [him] to admit to a kidnapping that wasn't charged in federal court." *Id.*

Moss stated that he had discussions with attorney Karowsky about his sentencing exposure if he went to trial and lost. *Id.* He stated that Karowsky hired a sentencing consultant, who opined that he had a maximum sentence exposure of 413 months. *Id.* at 21. According to Moss, Mr. Karowsky did not tell Moss that the judge could "depart upwards from guideline calculations." *Id.* He didn't find out that upward departures were possible until after he was convicted. *Id.* at 32. Accordingly, Moss says, he proceeded to trial thinking that the highest sentence he could receive was 413 months in prison. *Id.* at 22.

Moss testified that Mr. Karowsky did not tell Moss he could receive a sentence of 40 years in prison. *Id.* at 23. He also testified that he would have accepted a plea offer if he had not been required to admit to a kidnapping. *Id.* When asked whether he was ever advised that the charges against him carried a possible life sentence," Moss replied, "I seen that in the indictment, yes."[8] *Id.* However, he explained that while the indictment mentioned a sentence of life in prison, he was advised that because of his criminal history score he probably would not receive a life sentence. *Id.* at 39. Moss also testified that he did not contest the prostitution charge, but rather was contesting "the factual basis for later enhancement," such as "the aggravated circumstances or conduct, relevant conduct dealing with the – namely the kidnapping, criminal sexual abuse and whether or not I knew that Violet . . . and Jasmine . . . [the underage victims] was under the age of 18." *Id.*

/////

---

[8] Attached to the Fourth Superseding Indictment is a penalty slip showing a penalty of "any term of years or life imprisonment or both" as to counts 1, 2, 3 and 4, and "not less than 10 years and up to life imprisonment imposed consecutively to any other term of imprisonment" as to count 8. ECF No. 89, at 10. A similar penalty slip is attached to the earlier indictment specifying possible life sentence at to counts 1 and 2. ECF No. 74, at 9. Moreover, the First and Second Superseding Indictments also contain penalty slips which advise penalties up to life imprisonment. ECF Nos. 17 & 35.

On cross-examination, Moss agreed that attorney Karowsky and defense investigator Sandra Fletcher told him about the risk of going to trial and that he was likely to get convicted. *Id.* at 27. He was also told that the government's case against him was strong and that he could receive a prison sentence of as much as 40 years if he was convicted, but "predicated on the 934(g) charge that I never received." *Id.* at 27-28. However, he "thought at maximum I was looking at 29 years." *Id.* at 32.

Moss further testified that Karowsky told him the government had offered him "a 12 year deal." *Id.* However, Moss rejected it because it forced him to admit to a kidnapping. *Id.* at 35. He testified that he told Karowsky, "I will take 15 if you take this kidnapping off." *Id.* Moss stated, "I knew that I could've got 12 years in the feds and I could've got a life sentence in the state." *Id.*

Moss testified on re-direct examination that when the sentencing consultant's report was presented to him, he was told that the "worst that could happen to me if I went to trial based on the indictment" was 415-473 months, if he was convicted of a gun charge that was not then contained in the indictment. *Id.* at 38-39. However, since the gun charge had not been included in the indictment, he believed the "bare minimum" sentence would have been between 355-413 months in prison. *Id.* at 46. Moss testified that prior to going to trial, no-one told him that he could get the sentence he received: 480 months in prison. *Id.* at 42-43.

Moss was mostly concerned with all of the "add-ons" for conduct that could increase his sentence from the base level. *Id.* at 40. He was specifically concerned about allegations that he beat one of the victims, that he branded another victim with an iron, and that he kidnapped a victim. *Id.* at 42. That was the "focus of [his] concern in terms of the evidence in the case." *Id.*

Attorney Karowsky also testified at the evidentiary hearing. He confirmed statements in his declaration, described above, *id.* at 48, and explained that he took steps to develop a defense in the face of "pretty dramatic allegations" from the victims in this case. *Id.* at 52. He stated that he and investigator Sandra Fletcher investigated "every minute detail that we possibly could," including obtaining juvenile criminal records of the underage victims. *Id.* at 52-53. Mr. Karowsky formed the opinion after conducting an investigation that the likelihood of success at a

trial was "very bad." *Id.* at 54. He could not "corroborate, substantiate or prove the facts that Mr. Moss was telling us that existed." *Id.* He thought the government's case against Moss was "exceptionally strong and devastatingly emotional." *Id.* at 55. He was afraid that Moss would be sentenced "very harshly" and he told him that. *Id.* In light of the facts of Moss' case, Karowsky thought "a judge would sentence somebody at the upper end of the guidelines with an upward departure." *Id.* at 56.

Karowsky explained that the government initially offered Moss a plea deal for a 14 year sentence. *Id.* at 56. He said he ultimately negotiated a 12 year offer from the government and conveyed that offer to Moss. *Id.* at 57. Karowsky considered this "a fantastic deal." *Id.* He hired a sentencing expert to assist him in evaluating the government's offer and the accuracy of the guidelines. *Id.* at 58. This consultant determined that Moss "could be looking at 473 months in prison, close to 40 years." *Id.* at 59. Karowsky explained that although the consultant's figures were subject to "some uncertainty" because of the complicated nature of the sentencing guidelines, he told Moss that he could "go away for 40 years." *Id.* at 60. He explained that the government was "threatening to add" another charge against Moss, which could have raised his possible sentence to "close to 48 years." *Id.* at 61.

Karowsky also testified that he discussed the government's plea offer with Moss. *Id.* at 75-76. Karowsky believed, but did not remember, that he also handed Moss a copy of the plea offer. *Id.* He testified it was his "practice and policy" to give his clients a copy of plea offers. *Id.* at 65. Karowsky also handed Moss a copy of the sentencing consultant's assessment, which stated that if the government added another handgun charge, Moss was facing between 415 and 473 months in prison. *Id.* at 65. *See also* Government Exhibit 2. Karowsky stated that "on multiple occasions" he told Moss that he "had a 12 year plea offer or a risk of as much as 40 years if he went to trial." ECF No. 355 at 61. Karowsky stated that Moss had an angry response to the government's plea offer and the sentencing consultant's estimate of his possible prison sentence. *Id.* at 64-65. After that initial response, Karowsky had a second meeting with Moss to discuss the plea offer. *Id.* at 66.

/////

Attorney Karowsky testified that he also talked with Bernadette Banks, Moss' mother, about the plea offer. *Id.* at 67. He explained that Moss was "being recalcitrant, and reluctant and not – was not amenable to taking the deal" so he tried to persuade Banks to go with him to the prison to persuade Moss to take the deal. *Id.* Karowsky said he met with Moss for a third time to try to persuade him to "take the deal." *Id.* at 69. He testified that Moss was "upset with the plea agreement and started yelling." *Id.*

Mr. Karowsky denied that Moss told him he desperately wanted to take a plea and that he would accept an offer at the high end of the guidelines range. *Id.* at 70. He stated that he was not able to get through" to Moss to induce him to accept the plea offer, possibly because Moss did not understand "the facts and the emotion and the law that was going to bury him." *Id.* Karowsky disputed Moss' allegation that he was not advised of the sentencing consequences of proceeding to trial as "flatly false." *Id.* at 70-71. He stated that he "gave him an expert sentencing consultant's detailed analysis with the various contingencies and explained it to him in detail." *Id.* at 71. He stated that he believed it was "absolutely mandatory" that Moss accept the government's 12 year plea offer and he "made that clear on at least three occasions, if not more." *Id.* at 72.

When asked on cross-examination whether Moss was concerned about his pending charges in San Joaquin Count, Karowsky stated that he did not remember any pending state charges. *Id.* at 82. He stated, "there were no pending charges," and "there was nothing pending as far as I know." *Id.* He explained: I would never have done a deal unless it was a global resolution and there was nothing that I could even find." *Id.* He states, "there were never, to my knowledge, pending charges in San Joaquin County." *Id.* at 83.

Karowsky testified that Moss never expressed concern that if he admitted to kidnapping "or some of the other factors that were used to enhance his sentence," that these admissions could be used against him in San Joaquin County. *Id.* He stated, "this is the first I've really ever heard that there were any pending charges in San Joaquin County." *Id.* He stated that he would not have negotiated "a deal of this magnitude with something pending in San Joaquin County that had any relationship to these charges or otherwise." *Id.* at 84. He agreed that "if a lawyer in your

position representing someone in federal court where there are related charges of similar ilk pending in a state court that it would be ineffective assistance of counsel not to attempt to package the two in a disposition." *Id.*

Mr. Karowsky denied he told Moss that a condition of entering into a plea agreement in federal court would be that Moss would have to admit to a kidnapping in San Joaquin County. *Id.* Karowsky did not recall that Moss asked him to investigate to determine whether or not there were charges pending against him in Stockton. *Id.* He also testified that Moss did not express any concern about admitting to any of the aggravating factors that the government sought to use to substantiate an enhanced sentence, such as kidnapping allegations. *Id.* Nor did Moss tell Karowsky that he would accept a plea if the government removed aggravating factors, such as that he engaged in criminal sexual abuse, burned a woman with an iron, or kidnapped a woman. *Id.* Mr. Karowsky did not recall Moss asking him to petition the government to remove the "notion of admitting to a kidnapping from the plea deal;" he did not believe that Moss was being asked to admit to a kidnapping in the plea offer. *Id.* at 86. Karowsky conceded that the government's plea offer required Moss to admit to certain offense characteristics, such as beating one victim, verbally threatening the same victim, and threatening the victim with firearms to effect his scheme. *Id.* at 89. Karowsky denied that Moss told him "he would plead, but without pleading to those other things." *Id.*

Mr. Karowsky agreed that it was part of his responsibility to investigate whether there were other charges pending against Moss at the time he was negotiating a plea with the federal government, and that failure to do so would be "ineffective assistance of counsel." *Id.* at 90-91. He assumed that he did that in this case. *Id.* at 91. He reiterated that did not remember that there were any state charges pending against Moss at that time. *Id.* He knew Moss had been arrested in Stockton, but he did not believe state charges had resulted from that arrest. *Id.* at 92. He stated, "I didn't contact San Joaquin County and to my knowledge there were not charges pending in San Joaquin." *Id.* at 94. He agreed, however, that if there was in fact a pending San Joaquin charge, he would have been obligated to investigate that charge to determine whether a federal disposition would adversely affect it. *Id.*

23

On re-direct examination, Karowsky stated that, consistent with his usual practice, he would have reviewed the government's plea offer with Moss and would have gone over all points. *Id.* at 95. Karowsky's time sheets show several meetings with Moss about the plea offer in November, 2005. ECF No. 364-1 at 19-29. He testified "what I would've talked to Mr. Moss about is that the guidelines are going to be at 25 and a half to 29 and a half years and they're offering 14, hopefully at this point it wasn't yet 12, and if you don't take it then they're going to – if you go to trial and lose, then the government's going to try to seek an upward departure based on what they've alleged in the next paragraph." *Id.* at 96-97. Respondent's counsel pointed out that the plea agreement states that the government intended to seek an upward departure based on Moss' extreme conduct, including "essentially kidnaping at least one if not two girls from Stockton to work for him." *Id.* at 97; Resp't's Ex. 1 at consecutive p. 3. Karowsky explained that Moss' actions did not constitute a "legal kidnapping" but that the government simply chose to characterize his actions in that manner in the plea agreement in order to establish Moss' exposure on count 1 for a potential upward departure if he were convicted after a trial. ECF No. 355 at 97-98. Karowsky did not think, but didn't know for sure, that the plea offer required Moss to admit to the fact that he had "essentially kidnapp[ed] anybody." *Id.* at 98. Karowsky read the language of the plea agreement to mean that "if you don't take the deal, then we're going to attempt to augment or do an upward departure based on the essential kidnapping." *Id.* at 99. He repeated that, to his knowledge, there had never been "a state case brought in Stockton arising from any of this conduct." *Id.* at 100.

On re-cross examination, Moss' counsel directed Karowsky's attention to the presentence report, which reflects that on December 18, 2003, Moss was named in a 5 count criminal complaint filed in San Joaquin County Superior Court, charging Moss with pandering by encouraging, resisting a peace officer, being a felon in possession of a firearm, and possession of ammunition. *Id.* at 100; Movant's Ex. A at 22. The report states that on December 18, 2003, Moss was arraigned and held on $1,000,000 bail, and on December 30, 2003, Moss "was not present due to his detention in the federal case." *Id.* Karowsky testified that he was not aware of this state court criminal matter pending against Moss at the time of the federal proceedings, or at

least did not recall it at the time of his testimony in this case. *Id.* at 105-06. Karowsky conceded that it could constitute attorney incompetence "if you handle a federal case without investigating to see whether or not there's another case going on in one of the other courts that could have a relationship" to the federal case. *Id.* at 106. When asked whether he had ever "heard anything from anybody ever concerning San Joaquin County charges," Karowsky responded:

> Well I just don't have a recollection. There may have been in the rap sheet, but I – and I just don't recall it. Candidly, if there was a pending charge, in my opinion, one of the conditions of this plea should've been that that charge is dismissed or it'd be concurrent time. But I just don't have any recollection of a San Joaquin County case frankly. It just isn't in my memory, nor was I alerted to that until this morning.

*Id.* at 106-07.[9]

Defense investigator Sandra Fletcher also testified at the evidentiary hearing. She testified that she worked "very hard" on Moss' case and that she conferred with Moss and Karowsky "regularly." *Id.* at 111. Moss told Fletcher that "he would beat the charges, that he was innocent." *Id.* at 113. He told Fletcher the government witnesses (the victims in this case) "were lying." *Id.* at 114, 115.

Mr. Karowsky told Fletcher that the government had offered Moss a plea for "12 years," *id.* at 115, that he thought Moss should accept this offer, *id.* at 117, and that he (Karowsky) had advised Moss to accept the offer. *Id.* at 117-18.

Moss told Fletcher that he "was not going to take a plea offer." *Id.* at 118. When asked whether Moss ever said that he would accept a 15 year plea deal, Fletcher responded that she didn't "remember that." *Id.* at 118. She testified she never told Moss that Karowsky was not "listening to him." *Id.* at 118-19. When she was asked whether Moss ever asserted that he "wanted a plea," Fletcher responded "Not that I can recall." *Id.* at 119.

Fletcher testified that Moss was advised he could receive "as much as 40 years if he went to trial and lost." *Id.* She knew this because "that was a discussion we would have had on an

---

[9] During the course of the evidentiary hearing, the government's counsel ascertained that the state court criminal matter pending against movant was dismissed on February 14, 2007. *Id.* at 161.

ongoing basis." *Id.* She said that Moss' sentencing exposure in this case "was a frightening thing for him." *Id.* at 121. She had a discussion with Moss about the plea offer and she was "certain that [she] would have encouraged him to take it." *Id.*

Fletcher also testified that she talked to Moss' mother about the case many times. *Id.* at 122. These conversations covered Moss' sentencing exposure and may have included the plea offer. *Id.* She stated that she never obtained information that she believed could raise a reasonable doubt as to Moss' guilt in this case. *Id.* at 123. Ms. Fletcher also testified that she never told Moss that she had "obtained or uncovered critical information that in your opinion would show reasonable doubt." *Id.* at 137.

When she was asked whether she was aware there were criminal charges pending against Moss in state court while she was an investigator in his federal matter, Fletcher testified "I have a recollection of a gun charge." *Id.* at 126. She did not recall whether Moss to her about "kidnapping allegations coming out of Stockton," but she said it was "quite possible." *Id.* She did not recall the strength of the evidence against Moss at the time. *Id.* at 128.

Fletcher agreed that Moss was "primarily concerned with contesting things other than his involvement in prostitution." *Id.* at 129. For instance, he was concerned about an allegation that he used a gun "to get someone out of a car." *Id.* at 130. She explained that Moss "bragged" about having done this. *Id.* Fletcher did not remember Moss discussing or mentioning any concern that there might be "interplay" between his state charges and his federal case. *Id.* at 131.

Fletcher testified that Moss never said anything to her about wanting to enter into a plea agreement; on the contrary, he wanted to go to trial. Moss told her that he did not know the age of one of the victims and that he was going to "contend that the victims were lying." *Id.* at 135. When asked whether she ever found anything "in all of the work you did and all the years you worked on this case that you thought would make a difference in the outcome of the trial," Fletcher answered, "no." *Id.* at 136.

Michael Chastaine, who was appointed as Moss trial counsel after attorney Karowsky was replaced, also testified at the evidentiary hearing. *Id.* at 140. Mr. Chastaine had been advised that he was being appointed because Moss was "not happy with Mr. Karowsky" and "wanted to

proceed to a trial." *Id.* After Mr. Chastaine was appointed, he and Moss discussed how they were going to proceed. *Id.* at 141. Moss "wanted to go to trial." *Id.* at 142. Chastaine stated that it was his understanding that, at the time he was appointed, Moss did not want to resolve the case with a plea agreement, but wanted to "try the case." *Id.* Chastaine's impression from talking with attorney Karowsky was that Moss "wasn't interested in a resolution." *Id.*

When asked whether Moss ever expressed "any hesitation about going to trial," Chastaine stated, "I don't recall him ever indicating a desire to resolve the case." *Id.* at 144. Chastaine did not recall Moss ever telling him that he "desperately wanted to take a plea" or that "he was willing to accept a plea offer at the high end of the guideline range." *Id.* He explained that his conversations with Moss "would've been fairly brief, to the point, assure myself that settlement was not an avenue worth spending time on and move the case forward." *Id.* at 145. Mr. Chastaine did not have a recollection of "any realistic attempt to try to settle the case or that Mr. Moss had any realistic idea to settle the case." *Id.* at 146. His understanding was that Moss "wanted to proceed to trial based on what I understood the kind of offers were being made." *Id.* at 147.

Chastaine was asked on cross-examination whether Moss talked to him about "a case that was pending in Stockton at the same time the federal case was going on." *Id.* at 149. He responded, "You know, I know he was arrested in Stockton and he was arrested by local authorities, so it's pretty common that there would be a state case kicking around. So I don't have a specific memory, but I'm pretty sure there was actually a Stockton case somewhere there." *Id.* at 149-50. When he was asked whether Moss talked to him about his fear that "something from the case in federal court here might have an effect on the state case," Mr. Chastaine testified, "I don't remember that conversation." *Id.* at 150. Chastaine also stated he didn't "have much concern about the Stockton case." *Id.* at 151. Chastaine agreed that the "focus of the defense" was on allegations of "violence, coercion, things of that nature." *Id.* Mr. Chastaine also testified that part of the trial strategy was to challenge the government's theory that Moss had control over the victims and that he used force with the victims. *Id.* at 155-56. It was also part of the trial strategy to challenge the veracity of the government witnesses. *Id.* at 156.

27

**Movant's Brief**

Moss asserts in his post-evidentiary hearing brief that attorney Karowsky failed to inform him that the trial judge had the power to depart upward from the sentencing guidelines range. ECF No. 362 at 1-2.  He states that the first time he learned this was after the trial was over.  *Id.* at 2.  Moss also states that Karowsky failed to show him the government's letter which contained the plea agreement explaining the government's intention to seek an upward departure if Moss rejected the plea offer.  *Id.* at 4.  Since this letter was not a formal plea agreement, Moss argues that Karowsky might not have followed his normal practice of showing his clients all written plea agreements.  *Id.* at 5.

Moss also states that Karowsky failed to inform him he could receive a prison sentence of 40 years in prison based on his current charges.  *Id.* at 3.  Moss concedes he was shown the report of the sentencing guidelines expert, but he argues the expert's analysis of his maximum sentence was based on the government filing a superseding indictment which contained an additional gun charge, which "the government never did."  *Id.*  He argues he was never told that he could receive a 40 year prison sentence based on the charges that were then pending against him.  *Id.*

Finally, Moss argues that Karowsky rendered ineffective assistance when he failed to address Moss' concern that "a guilty plea in this case could affect the then pending state charges." *Id.*  He argues Karowsky was ineffective in failing to "look into those charges," ECF No. 367 at 21, or "deal with" the state case.  *Id.* at 27.  In another section of his brief, Moss argues that although Karowsky must have known about the state charges at the time he represented Moss, "he just didn't do anything about them to facilitate the taking of a plea."  *Id.* at 28.  Moss also argues that Karowsky should have "tailor[ed] any plea agreement to account for [the state charges]."  *Id.*

Moss concedes that his state case was ultimately dismissed.  However, he argues:

> The prejudice from the IAC was different.  It caused Mr. Moss to reject any plea agreement that was not structured in a way that would avoid affecting the pending state charges that could involve a life sentence.

ECF No. 362 at 6.

**The Government's Brief**

The government also filed a post-evidentiary hearing brief.  The government concedes that Moss was charged in a five-count criminal complaint in San Joaquin County Superior Court with two counts of pandering by encouraging, two counts of resisting/obstructing/delaying a peace officer, and one count of being a felon or addict in possession of a firearm.  ECF No. 364 at 18; Govt's Ex. A (presentence investigation report), at ¶ 82.  The state case was closed in February, 2007, and did not proceed past the complaint stage.  ECF No. 364 at 18.

The government notes that the letter containing the plea offer, which Karowsky received, states that the government intended to seek an upward departure based on the following actions by Moss: "(1) beating Vinnie Brooks to the point she lost consciousness; (2) branding one of the women working for him with a clothing iron; (3) sexually abusing the women working for him; and (4) essentially kidnapping at least one if not two girls from Stockton to work for him."  *Id.* at 23; ECF No. 364-1 at 6.  The plea offer also states, "assuming an upward departure was given, the defendant will be facing well over 30 years."  ECF No. 364-1 at 6.  The government argues that Moss was fully aware of this because he reviewed and discussed the plea offer/letter with Karowsky.  Further, Karowsky testified he "would have talked to Mr. Moss" about the government's intent to seek an upward departure."  ECF No. 364-1 at 140-41.  The government argues that Moss' claim that he did not see the plea agreement is not credible, given the fact that he knew so many specifics about it at the evidentiary hearing.  *Id.* at 40.  The government also argues that Moss was not required in any way to admit to a kidnapping as part of the plea agreement.  The word "kidnapping" was simply included in the plea offer to describe the bases on which the government would seek an upward departure.

The government contends that Moss' allegations and testimony about the plea agreement are not credible in light of his behavior toward the victims, the numerous shifting positions and claims he has raised in challenging his conviction, and his criminal history.  *Id.* at 41-43.  The government also notes that Karowsky testified he reviewed the plea offer with Moss.  Those meetings are documented in Karowsky's contemporaneous time sheets.  *Id.* at 46.  In addition,

both Karowsky and Fletcher testified they urged Moss to accept the plea offer.  *Id.*  Fletcher

testified she was "certain" that she discussed the plea offer with Moss.  ECF No. 364-1 at 165.

Fletcher also testified Moss told her he was "not going to take a plea offer."  *Id.* at 162.  In

addition, Chastaine testified that he understood he had been hired to take the case to trial because

Moss did not want to accept a plea offer.  *Id.* at 186, 188.

The government contends that Moss was "well advised" by Karowsky about his chances

at trial; the consequences of going to trial, including the fact that he could receive a life sentence

if he was convicted; and the fact that he could be sentenced "far in excess of the Government's

offers if he lost at trial."  *Id.* at 43-45.  The government argues that "when compared to the

Government's offers, the difference between 413 months and 480 months – a difference of 16

percent – did not impact Defendant's understanding of his choice between pleading guilty and

going to trial."  *Id.* at 45.

The Government also argues that the evidence shows Moss wanted to go to trial and was

not willing to accept a plea offer.  *Id.* at 46.  The government notes Karowsky's testimony that at

his last meeting with Moss they "discussed the plea agreement and he was extremely upset with

me, and upset with the plea agreement and started yelling."  ECF No. 364-1 at 113.  The

government also notes that Fletcher testified that Moss thought he could beat the charges and that

he could prove the victim witnesses were not telling the truth.  ECF No. 364 at 46; ECF No. 364-

1 at 157, 159.

The government contends that Karowsky was not ineffective in failing to tell Moss he

could receive a 40-year sentence based only on the pending charges.  The government argues that

Moss was aware of the risks he was taking if he did not accept the plea offer, including the risk

that the government could add a firearm charge, thereby increasing his potential sentence.  ECF

No. 364 at 48.  The government argues, in essence, that Karowsky advised Moss of the range of

options that he faced if he did not accept the plea offer, including the fact that he faced 40 years in

prison if the government added an additional gun charge to the indictment.  The government

contends that Karowsky's advice to Moss was not unreasonable simply because the government

did not end up charging another gun count.  *Id.* at 49.  The government also argues that Karowsky

was not required to predict the exact sentence that Moss would receive but was only required to give advice based on a reasonable assessment of his case. ECF No. 364 at 47.

With regard to Moss' claim that he could not accept the plea offer because it would have exposed him to kidnapping charges in state court, the government argues that Moss would not have accepted any plea offer regardless of its terms. *Id.* at 49. The government also argues that Karowsky had no duty to contact state authorities because the federal court had simply adopted the state case and had therefore "addressed the full scope of the conduct underlying the state charges." *Id.* at 50. The government contends, "in a federal adoption case, there is no need for defense counsel to negotiate with state authorities because the resolution of the federal case will effectively resolve both cases." *Id.* The government argues that Karowsky "was not obliged to treat the state case as a parallel proceeding in this context." *Id.*

The government also argues that Moss did not suffer prejudice from Karowsky's failure to "deal with" the state case because: (1) Moss refused to accept any guilty plea; (2) Moss was not asked to admit to a kidnapping in any event; (3) Moss was never charged with a kidnapping in any court and his asserted concern about this issue "should be rejected as pure speculation;" (4) Moss could have entered an "open plea" and avoided the kidnapping issue altogether if he was concerned about it; and (5) Moss already knew about the state case and was therefore in possession of all relevant information at the time he rejected the plea. *Id.* at 50-52. The government argues, in short, that Moss had all of the information necessary to make an "intelligent" decision about whether to plead guilty.

**Movant's Reply Brief**

In his reply brief, Moss argues that Karowsky rendered ineffective assistance in failing to "look into" the state charges and in failing to "package the two in one disposition." ECF No. 367 at 21. He also contends that Karowsky should have gotten the state charges dismissed. *Id.* at 28. He argues that Karowsky "failed to act" on the Stockton charges or "tailor any plea agreement to account for them." *Id.* at 28. Moss contends that because of Karowsky's failure to "deal with" the Stockton case, he was "forced into taking the case to trial." *Id.* at 27.

/////

31

Moss also argues that the state complaint involved different victims than the federal case and was therefore, contrary to the government's argument, not "adopted" by the federal government when it filed its indictment. *Id.* at 22-23. Moss notes that the state charges were not dismissed until after his federal trial was concluded, and he argues that "there was nothing stopping the state from taking that case to trial after the federal verdict." *Id.* at 23-24, 25. Additionally, Moss argues that it is irrelevant that the state charges were ultimately dismissed because:

> Mr. Karowsky's admittedly negligent failure to deal with the Stockton case and his consequent failure to do what was necessary to assure Mr. Moss that a plea in the federal case would not adversely affect the Stockton case convinced Mr. Moss not take [sic] the proferred disposition in the federal case. That's the prejudice.

*Id.* at 28-29.

Moss notes that Karowsky could not remember at the evidentiary hearing whether there was a written plea agreement in this case. *Id.* at 32-33. He argues that this testimony casts doubt on Karowsky's testimony that he believed he showed the government's letter outlining the plea offer to Moss because that was his "practice and policy." *Id. See also* ECF No. 364-1 at 109. Moss argues, "simply put, given that Mr. Karowsky had no specific memory that there was a written plea letter, given that he had no specific memory of handing the that [sic] letter to Mr. Moss, there is simply no foundation for concluding that Mr. Karowsky followed what he alleged to be his practice of giving all his clients in federal cases a copy of such a letter." *Id.* at 34.

### iii. **Analysis**

As set forth above, there was conflicting testimony at the evidentiary hearing from movant and his mother on one hand, and all of the other witnesses on the other hand, about the facts surrounding Moss' allegations. Based on his demeanor on the witness stand, the implausible nature of his testimony, the fact that significant parts of his testimony were contradicted by the other witnesses at the evidentiary hearing, and the fact that he had an obvious interest in testifying in a way that would support his habeas claims, the court finds Moss not to be a credible witness.

/////

Specifically, this court did not find credible Moss' claims that he did not see a copy of the plea agreement, that he was not aware the government was seeking an upward departure from the sentencing guidelines, and that he was not informed he could receive a sentence of 40 years in prison on the charges then pending against him. The court also finds incredible Moss' testimony that he was willing to accept a plea offer but was forced to proceed to trial because Karowsky ignored his requests to coordinate his federal plea with his state court criminal prosecution.

Testimony at the evidentiary hearing also refutes Moss' allegations. He testified that Karowsky showed him a document that said "plea offer" and that Karowsky "wanted me to take a plea and he discussed it with me." ECF No. 364-1 at 62. Karowsky's billing sheets describe conferences with Moss regarding case status and Moss' angry review of the plea offer. Fletcher testified that Moss discussed the plea offer in detail with her and with Karowsky. Fletcher had no incentive to fabricate her testimony in this regard. That plea offer set forth the government's intention to seek an upward departure from the sentencing guidelines.

With regard to the length of his sentence, Karowsky testified that he told Moss he could "go away for 40 years" and that if the government added another charge he could possibly be sentenced to "close to 48 years." ECF No. 355 at 60, 61. Even if his estimate of Moss' sentence was not entirely accurate, Karowsky was not required to guess the exact sentence Moss would receive. Although counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." *See Turner*, 281 F.3d at 881. Karowsky's advice to Moss that he could "go away for 40 years" and possibly "close to 48 years" was not constitutionally deficient.

The court also does not find credible Moss testimony that Karowsky ignored his requests to ensure his federal plea did not negatively impact his state case. Karowsky testified he was not "alerted" to any problem with a state case until the federal evidentiary hearing. ECF No. 355 at 107. Similarly, neither Fletcher nor Chastaine remembered Moss discussing any concern about his state case. *Id.* at 130. No mention of Moss' purported concern with state kidnapping charges appears in Karowsky's contemporaneous notes. It strains credulity to believe that Karowsky did not address this issue but simply stood by, causing Moss to reject the plea offer that Karowsky

wanted him to accept. The only logical conclusion is that Moss did not raise this issue with Karowsky. In short, there is no credible evidence that Moss was forced to reject the plea offer because Karowsky refused or failed to resolve issues with regard to the state court case.

The court also found incredible Moss' testimony that Karowsky told him he would have to admit to a kidnapping if he were to accept the government's plea offer. The plea offer that Moss received did not require him to admit to a kidnapping. Nor was he charged with kidnapping in state court. In short, based on the record before the court, the court concludes that the advice Moss received from Karowsky was sufficient to allow him to make an informed and intelligent decision regarding whether to accept the government's plea offer.

Even assuming arguendo that Karowsky failed to advise Moss about the possibility of an upward departure from the sentencing guidelines, failed to advise him that he could receive a prison sentence of 40 years on the pending charges, and/or failed to synthesize the state and federal criminal matters, Moss has failed to show prejudice. The court did not believe Moss' testimony that he wanted to enter into a plea agreement and that he informed Karowsky and Fletcher of this. Nor did the court believe Bernadette Banks's testimony that Moss told her he wanted to enter a plea. Karowsky and Fletcher testified that Moss refused to enter into any plea agreement, angrily rejected the suggestion that he do so, and wanted to go to trial in order to prove that the government witnesses were lying. Similarly, attorney Chastaine never got the impression from anything Moss said that he wanted to enter a plea. On the contrary, Chastaine understood that Moss had no interest in a plea deal but was determined to proceed to trial. The court found Karowsky, Fletcher, and Chastaine to be very credible witnesses and credits their testimony that Moss was not interested in accepting a plea offer. Under these circumstances, Moss has failed to demonstrate a reasonable probability he would have accepted the plea offer had he been afforded effective assistance of counsel. *See Frye*, 132 S.Ct. at 1409.

/////

/////

/////

/////

34

Because he has failed to demonstrate either deficient performance or prejudice, Moss is not entitled to relief on his claim of ineffective assistance of counsel during the plea bargain process.[10]

### 3. Trial Proceedings

Moss also claims that his trial counsel rendered ineffective assistance during his trial. His claim in this regard is stated, in full, as follows:

> Petitioner's counsel failed to: (1) challenge the erroneous jury instruction: the court instructions for count 8 were based entirely on use and carry, while the indictment only charged possession, and failed to instruct on possession and/or in furtherance of; (2) challenge the constructive amendment of the indictment; Count 8 charged possession in furtherance of, while the court instructed only on use and carry during and in relation to; (3) properly challenge the sufficiency of the evidence for Count 8: counsel failed to adequately and effectively argue that Count 8 was based entirely on the alleged conduct involving Ms. Vest, who testified that she was never threatened by a weapon and never saw Petitioner with a firearm.

ECF No. 354-1 at 5. For the reasons discussed below, the record before this court does not support Moss' claims of ineffective assistance of counsel in connection with his trial.

### a. Failure to Challenge Jury Instruction

The Fourth Superseding Indictment in this case charged Moss with a violation of 18 U.S.C. § 924(c)(1)(A), "Possession of a Firearm in Furtherance of a Crime of Violence." ECF No. 89 at 5. In Count Eight of that indictment it was alleged, in pertinent part, that Moss "did possess a firearm . . . *in furtherance of a crime of violence*, which may be prosecuted in a court of the United States . . . ." *Id.* at 5-6 (emphasis added). In connection with the charge in Count Eight, Moss' jury was instructed with then-current Ninth Circuit Model Jury Instruction No. 8.65, which provided, in part: "The Defendant is charged in Count Eight of the Fourth Superseding Indictment with using, carrying, or possessing a firearm *during and in relation to a crime of violence* in violation of Section 924(c) of Title 18 of the United States Code." Reporter's

---

[10] Moss has also failed to demonstrate entitlement to federal habeas relief on any of the other allegations contained in his objections to the January 20, 2015 findings and recommendations concerning this claim.

Transcript of Jury Trial Proceedings (RT) at 163 (emphasis added). Moss now claims that his

trial counsel rendered ineffective assistance by failing to challenge that jury instruction which,

according to Moss, was "based entirely on use and carry, while the indictment only charged

possession, and failed to instruct on possession and/or in furtherance of." ECF No. 354-1 at 5.

Respondent concedes that in 2009, after Moss' trial, the Ninth Circuit found that the

version of Jury Instruction No. 8.65 given at Moss' trial did not correctly set forth the elements of

an offense under 18 U.S.C. § 924(c). Specifically, in *United States v. Thongsy*, 577 F.3d 1036,

1043 n.5 (9th Cir. 2009), the court concluded:

> In particular, the instruction does not track the language in § 924(c)
> that makes it unlawful to possess a firearm "in furtherance of" a
> drug crime. Instead, the instruction invites error by allowing a
> judge to instruct a jury that the relevant offense involves possessing
> a firearm "during and in relation to the crime." Model Jury
> Instruction 8.65 thus should be revised to clarify there are two ways
> to prove an offense under § 924(c): the defendant either (1) used or
> carried a firearm "during and in relation to" a crime or (2)
> possessed a firearm "in furtherance of" a crime.

*Id*. Respondent nonetheless argues that the trial court's error in giving the previous version of

the Ninth Circuit's Model Instruction No. 8.65 was harmless. Respondent argues there was

"overwhelming evidence here to show that the defendant possessed his sawed-off shotgun 'in

furtherance of' a crime of violence," and there was no evidence suggesting that Moss

"unknowingly or accidentally possessed the firearm while running his prostitution ring." ECF

No. 268 at 8.

The court concludes that Moss' trial counsel did not render a deficient performance in

failing to object to the giving of the model jury instruction as it appeared at the time it was given.

Counsel is not required to anticipate a change in the law. *See Lowry v. Lewis*, 21 F.3d 344, 346

(9th Cir. 1994) ("[A] lawyer cannot be required to anticipate our decision in this later case,

because his conduct must be evaluated for purposes of the performance standard of Strickland "as

of the time of counsel's conduct.") (quoting *Strickland*, 466 U.S. at 690); *see also Smith v.

McKee*, 598 F.3d 374, 384 (7th Cir. 2010) (concluding that a lawyer's failure to object to the use

of an applicable pattern jury instruction does not amount to objectively unreasonable assistance of

counsel under *Strickland*); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir.1994) ("We have

held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop."); *Funchess v. Wainwright*, 772 F.2d 683, 691 (11th Cir.1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper . . . does not constitute ineffective assistance of counsel."); *United States v. Cooper*, Crim. No. 04-20105-01-CM, 2013 WL 3895266, at *2 (D. Kan. July 29, 2013) ("Because the challenged portions of the court's instructions mirrored the applicable pattern jury instructions, counsel did not act in an objectively unreasonable manner by not objecting to them."); *McGirt v. Hendrickson*, No. 8:03-CV-2272-T30-MAP, 2007 WL 1841211, at *4 (M.D. Fla. Mar. 29, 2007) ("A defendant may not claim that counsel was ineffective for failing to anticipate a change in the law before it is announced").

Moreover, even assuming arguendo that trial counsel rendered ineffective assistance in failing to object to the giving of Ninth Circuit Model Jury Instruction No. 8.56 as it existed at the time of trial, Moss has failed to demonstrate that he suffered any prejudice as a result. Here, there is no evidence the trial court would have sustained an objection to the giving of this instruction, which had not been criticized or invalidated at the time of Moss' trial. Moss has also failed to counter in any way the extensive evidence presented at trial in this case that he possessed a firearm in furtherance of running his prostitution ring, as charged in the indictment. Indeed, in its opinion affirming Moss' judgment of conviction on appeal, the Ninth Circuit noted that:

> A rational juror could also find beyond a reasonable doubt that Moss possessed a firearm in furtherance of count 3, 6, or 7 as charged in count 8. There was evidence that he had a sawed off shotgun between July 13, 2005 and July 25, 2005, the relevant time period, on a recruiting and prostituting trip to Sacramento, Stockton, and Oakland with Brooks, V.V., and new recruits; and that he used the gun to scare and threaten his prostitutes, V.V. among them. Thus, count 3 suffices as a predicate for conviction on count 8.

ECF No. 243 at 4. Under these circumstances, Moss has failed to show that the result of the proceedings would have been different had his trial counsel objected to the giving of Ninth Circuit Model Jury Instruction No. 8.56 as it existed at the time of trial. *See Thongsy*, 577 F.3d at 1042-44 (holding that 924(c) jury instruction error was harmless); *United States v. Nobari*, 574 F.3d 1065, 1080 (9th Cir.2009) (holding conflating two statutory clauses of § 924(c) in jury

1    instructions "did not 'seriously affect[ ] the fairness, integrity or public reputation of' the trial.").

2        Because Moss has not demonstrated deficient performance or prejudice, he is not entitled

3    to relief on this aspect of his claim of ineffective assistance of trial counsel.

4                    **b.  Failure to Challenge Constructive Amendment of the Indictment**

5        In his next claim for relief, Moss argues that his trial counsel rendered ineffective

6    assistance in failing to challenge the "constructive amendment" of Count 8 of the indictment.

7    ECF No. 354-1 at 5.  In support of this claim for relief, Moss alleges that "Count 8 charged

8    possession in furtherance of, while the court instructed only on use and carry during and in

9    relation to." *Id.*

10       Moss was charged in Count 8 of the Fourth Superseding Indictment with a violation of 18

11   U.S.C. § 924(c)(1)(A), which provides as follows:

12               Except to the extent that a greater minimum sentence is otherwise
             provided by this subsection or by any other provision of law, any
13           person who, *during and in relation to* any crime of violence or drug
             trafficking crime (including a crime of violence or drug trafficking
14           crime that provides for an enhanced punishment if committed by
             the use of a deadly or dangerous weapon or device) for which the
15           person may be prosecuted in a court of the United States, uses or
             carries a firearm, or who, *in furtherance of* any such crime,
16           possesses a firearm, shall, in addition to the punishment provided
             for such crime of violence or drug trafficking crime--
17

18   18 U.S.C. § 924(c)(1)(A) (emphasis added).  As noted above, the indictment charged that Moss

19   possessed a firearm "in furtherance of" a crime of violence," but the jury was instructed that Moss

20   had been charged in Count 8 with possessing a firearm "during and in relation to a crime of

21   violence."  ECF No. 89 at 5-6, RT at 163.  Moss appears to be suggesting that this variance in the

22   language of the indictment and that of the jury instruction constituted a constructive amendment

23   of the charge set out in Count 8.

24       "A defendant in a felony trial can only be convicted of charges upon which a grand jury

25   has returned an indictment."  *United States v. Arreola*, 467 F.3d 1153, 1162 (9th Cir. 2006).  An

26   indictment is constructively amended where "the evidence presented at trial, together with the

27   jury instructions, raises the possibility that the defendant was convicted of an offense other than

28   that charged in the indictment."  *United States v. Streit*, 962 F.2d 894, 899-900 (9th Cir. 1992).

The Ninth Circuit has described the "during and in relation to" and "in furtherance of" clauses of § 924(c) as "difficult to distinguish conceptually," in part because similar proof is required for each clause. *Arreola*, 467 F.3d at 1160. Because of this, the court in *Arreola* held that § 924(c) defines just one offense, and not two. *Id.* at 1161. Relying on the holding in *Arreola*, the Ninth Circuit has also held that a district court's error in confusing the language of the two clauses of §924(c) in its jury instructions does not violate the defendant's right to due process. *Nobari*, 574 F.3d at 1080-81.

As respondent points out, the indictment in this case, the original judgment, the amended judgment, and the verdict form all specify that Moss was convicted in Count 8 of possession of a firearm "in furtherance" of a crime of violence. ECF Nos. 89, 149, 188, 249. Under these circumstances, and in light of the Ninth Circuit case law cited above, the fact that the jury instruction given at Moss' trial included the language "during and in relation to" a crime of violence, instead of the language "in furtherance" of a crime of violence, does not constitute a constructive amendment of the indictment in this case. *See Arreola*, 467 F.3d at 1162 (holding that where the verdict form erroneously permitted conviction for "possession" of a firearm during and in relation to a drug crime but jury instruction correctly defined the offense, the verdict form did not constructively amend the indictment); *see also Nobari*, 574 F.3d at 1080 n.2 (even where jury instructions erroneously conflated the two clauses of § 924(c), there was no reversible error because the judgments and verdict forms reflected that the defendants had been convicted of the same prong of § 924(c) charged in the indictment). *Cf. United States v. Castano*, 543 F.3d 826 (6th Cir. 2008) and *United States v. Combs*, 369 F.3d 925 (6th Cir. 2004), (convictions reversed where incorrect jury instructions on § 924(c) charge were given and the judgments indicated that the jury had convicted under a different prong of § 924(c) than the one charged in the indictment). Here, it is clear from the trial record that Moss was convicted of the same offense that was charged in Count 8 of the indictment brought against him. The court does not believe that Moss would have accepted the plea offer had he been advised he could receive a sentence of 40 years in prison based only on the pending charges. He admits that he knew he could get a life sentence. He did not want a plea deal.

Because Moss has failed to show that a constructive amendment of the indictment occurred in this case, he has also failed to demonstrate either deficient performance on the part of his trial counsel in failing to raise an objection at trial on this ground or any prejudice resulting therefrom. Accordingly, Moss is not entitled to relief on this aspect of his ineffective assistance of trial counsel claim.

### c. **Failure to Challenge Sufficiency of the Evidence to Support Count Eight**

In his next claim for relief, Moss argues that his trial counsel rendered ineffective assistance in failing to "properly challenge the sufficiency of the evidence for Count 8." ECF No. 354-1 at 5. Moss argues that his trial counsel "failed to adequately and effectively argue that Count 8 was based entirely on the alleged conduct involving Ms. Vest, who testified that she was never threatened by a weapon and never saw Petitioner with a firearm." *Id.*

The record reflects that at the conclusion of the government's case in chief, Moss' trial counsel made an oral motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. ECF No. 268-9. The defense argued at that time that there had been introduced "no evidence whatsoever" that the shotgun found in Moss' possessions played a role in the charged crimes. *Id.* at 3. Trial counsel argued:

> Your Honor, I think that there is insufficient evidence in this particular case regarding the issue of Count 8. Mr. Moss is charged with possession of a shotgun in furtherance of a crime, violence in support of Count Three.
>
> Not, this is – Count Three is the bus ride of "Creamy" to Vegas. And there is no evidence whatsoever that the shotgun played any roll [sic] in any – in any fashion. The evidence – the best case scenario for the people is the telephone calls. And they may be threatening phone calls, but there is no evidence that the shotgun played any role whatsoever. And "Creamy", Violet Vest gets on the bus and goes to Las Vegas. See, I think the evidence is insufficient to support that portion of the allegation."

*Id.*

The Assistant United States Attorney responded to this Rule 29 argument as follows:

> The criminal sexual activity was the prostitution. The testimony was clear that the weapon was used both in California as Mr. Moss

travelled.  He also kept it in Las Vegas and showed it to, among other people, Vinnie Brooks.  The testimony was also clear that Mr. Moss had Vinnie Brooks call and talk to Miss Vest to encourage Miss Vest to take the trip that she ultimately took on July 2nd because Mr. Moss persuaded Miss Brooks that she had to tell "Creamy" that the conditions were good in Las Vegas, that Mr. Moss treated them correctly.

The fact is that Ms. Brooks made that telephone call and made those statements under duress partly as a result of the firearms that Mr. Moss used and displayed.

*Id.* at 5-6.  Moss' counsel then argued that there was no evidence "that the shotgun played any role even under the [government's] best scenario is that phone call that brought her there." *Id.* at 6.  The trial judge denied Moss' Rule 29 motion.  *Id.*

Moss has failed to demonstrate that his trial counsel's challenge to the sufficiency of the evidence with respect to Count 8 of the indictment was deficient in any way, or that the result of the proceedings would have been different if his counsel had specifically argued that Ms. Vest "testified that she was never threatened by a weapon and never saw Petitioner with a firearm." ECF No. 354-1 at 5.  The transcript of the trial proceedings, as set forth above, reflects that Moss' trial counsel argued that the evidence introduced in the government's case-in-chief was insufficient to support the charge set out in Count 8 and appropriately supported that argument with reference to the trial record.  There has been no showing suggesting that the trial court would have granted the motion for judgment of acquittal on Count 8 if his trial counsel had pointed out that Ms. Vest had testified she was never threatened with a weapon and did not see Moss with a firearm.  Indeed, counsel argued strenuously that there was no evidence that the gun played any role at all in the offense.  The trial court denied the motion and, as noted above, the Ninth Circuit also concluded on appeal that there was sufficient evidence introduced by the prosecution at trial to support Moss' conviction on Count 8.  ECF No. 243 at 4.

Moss has failed to establish either deficient performance or prejudice with respect to this aspect of his claim of ineffective assistance of trial counsel.  Accordingly, he is not entitled to post-conviction relief.

/////

/////

41

1      4. **Sentencing**

2      Moss also claims that his trial counsel rendered ineffective assistance during the

3      sentencing proceedings.  His claim in this regard is stated, in full, as follows:

4              Petitioner's counsel failed to: (1) argue that the additional
               enhancement under 5K2.0 constituted impermissible double
5              counting since that same conduct (i.e., force and sexual abuse) had
               already been employed in applying 2A3.1; (2) argue that the
6              upward departure and/or variance violated Petitioner's Due Process
               right to notice, and to be sentenced on the basis of accurate
7              information and facts; (3) failed to argue that the sentences for
               Count 8 should be based on the indictment, i.e., possession instead
8              of use.

9      ECF No. 354-1 at 7.  In his objections to the original findings and recommendations in this

10     matter, Moss appeared to withdraw claims (1) and (3) and part of claim (2), above.  ECF No. 296,

11     at 19-20.  However, in an abundance of caution the court will address these claims on the merits.

12     As discussed below, the record before the court does not support Moss' claims of ineffective

13     assistance of counsel in connection with his sentencing.

14              a. **Failure to make a "double counting" argument**

15     Moss argues that his trial counsel rendered ineffective assistance in failing to argue at

16     sentencing that "the additional enhancement under 5K2.0 constituted impermissible double

17     counting since that same conduct (i.e., force and sexual abuse) had already been employed in

18     applying 2A3.1."  ECF No. 354-1 at 7.[11]

19     The record reflects that Moss' trial counsel filed a sentencing brief in which he made the

20     following arguments:

21              The Governments [sic] recommendation is far beyond the
               Presentence Investigation Report recommendation that the Court
22              sentence Mr. Moss to 360 months plus 120 months (40 years) in

23

24              [11] "Impermissible double counting occurs . . . when one part of the [United States
       Sentencing] Guidelines is applied to increase a defendant's punishment on account of a kind of
25     harm that has already been fully accounted for by application of another part of the Guidelines."
       *United States v. Martin*, 278 F.3d 988, 1004 (9th Cir. 2002) (quoting *United States v. Alexander*,
26     48 F.3d 1477, 1492 (9th Cir. 1995)).  United States Sentencing Guidelines (USSG) § 5K2.0
       describes the grounds for upward and downward departures from the applicable sentencing
27     guideline range in criminal cases, including child crimes and sexual offenses.  USSG § 2A3.1,
       referred to by movant in this claim, is the applicable sentencing guideline for cases involving
28     criminal sexual abuse and attempt to commit criminal sexual abuse.

> prison. It [sic] order to achieve this sentence, the Presentence Report recommends, among other things, a 5-level upward departure. As will be more fully argued below, the guidelines sufficiently take into account Mr. Moss's offense conduct, relevant conduct and criminal history. The upward departure is neither warranted nor supported by the evidence.
>
> All of the evidence presented, including the relevant conduct, was and is taken into account by the guidelines and upward adjustments – such as the 4-level increase found in §2G1.1(b)(1) [use of physical force, fraud or coercion.]
>
> While the relevant conduct may be grounds for sentencing in the middle or top of the guidelines, it does not support the upward departure.
>
> * * *
>
> Further, the guidelines do take into account all relevant conduct surrounding the crimes for which Mr. Moss was convicted. Any additional "victims" may justify using the middle or high end of the guidelines range but do not justify such an extreme upward departure that leads to a life term.
>
> * * *
>
> Using the same "victims" and the same course of conduct, the Government recommends and [sic] additional 2 level increase under § 5K2.21. While it is true that additional crimes could have been charged involving these adults, the jury did not make any finding regarding these women. Again, any additional "victims" may justify using the middle or high end of the guidelines range but do not justify such an extreme upward departure that leads to a life term.

ECF No. 160 at 4-5, 8.

Thus, the record reflects that Moss' trial counsel did, in fact, advance the argument Moss now suggests should have been made on his behalf: that the trial court should not rely upon the same conduct twice in order to increase his sentence. Accordingly, Moss' claim that trial counsel rendered ineffective assistance in failing to raise this argument appears to lack a factual basis.

In addition, Moss has failed to demonstrate, or even to allege, that the trial court engaged in double counting in imposing sentence. In this regard, the Ninth Circuit upheld the sentence imposed upon Moss, commenting as follows:

> Moss contends that application of the cross-reference to U.S.S.G. § 2A3.1 should have been based on clear and convincing evidence, as the government acknowledged in the district court. The district

43

court explicitly found most of the core facts underlying the cross-reference by clear and convincing evidence; to the extent it did not so characterize all of the findings, the court's view of the strength of the evidence is clear from the sentencing proceeding as a whole. We see no prejudicial error.

Finally, Moss challenges his sentence as substantively unreasonable. He faults the court for basing its determination on unreliable or untrue facts, but trial testimony, credited by the jury, showed that, among other things, Moss beat all seven women frequently and gratuitously, beat Brooks into unconsciousness, and made sexual demands that were humiliating and constant. The district court arrived at a sentence that it believed appropriate after careful consideration of Moss's conduct and criminal history, the Guidelines, and 28 U.S.C. § 3553(a). We conclude the sentence was reasonable.

ECF No. 242 at 5.

Under the circumstances presented here, Moss has failed to demonstrate that his trial counsel rendered ineffective assistance in failing to object to "double counting" in the imposition of his sentence, or that he suffered prejudice from his trial counsel's alleged failure to make such an argument. Accordingly, he is not entitled to relief on this aspect of his ineffective assistance of trial counsel claim.

### b. **Failure to Argue that the Upward Departure and/or Variance violated Movant's Due Process Rights**

In his next claim for relief, Moss argues that his counsel failed to argue at the time of sentencing that the trial court's "upward departure and/or variance" violated Moss' right to "notice" and that he should be sentenced "on the basis of accurate information and facts." ECF No. 354-1 at 7.

As respondent points out, there were two sentencing hearings in Moss' case. ECF Nos. 170, 184. At the first such hearing on September 29, 2006, the trial court requested further briefing from the parties "re upward departure & possibly 'understated' criminal history category & 'uncharged conduct' issue." ECF No. 170; Reporter's Transcript of Sentencing on Appeal (September 29, 2006) ("RTS 9/29/06"), at 19. At that time the trial judge specifically informed the parties that "out of a sense of caution, I don't want to sentence the defendant without all the

44

1    parties being fully aware of what is possible in the case. . . ." RTS 9/29/06 at 19.  It was at the

2    sentencing hearing held on February 9, 2007 that, after receiving briefing and hearing argument

3    from counsel on this issue, the trial court departed upward in sentencing Moss.  Reporter's

4    Transcript of Sentencing on Appeal (February 9, 2007) (RTS 2/9/07).[12]  Accordingly, the record

5    establishes that Moss and his counsel received advanced notice that the trial court was

6    considering an upward departure from the sentencing guideline range in imposing sentence upon

7    Moss.

8         At the sentencing hearing on February 9, 2007, the sentencing judge found that the facts

9    supporting an upward departure in this case were established by "heightened clear and convincing

10   standard of proof" and that there were "aggravating circumstances of a degree not adequately

11   taken into consideration by the Sentencing Commission."  RTS 2/9/07 at 16.  The sentencing

12   judge therefore imposed a single five-level upward departure based on sentencing guidelines

13   §§ 5K2.8 (extreme conduct) and 5K2.21 (uncharged conduct).  *Id.*  As noted above, Moss

14   challenged the upward departure as well as other aspects of his sentence on appeal.  Nonetheless,

15   the Ninth Circuit concluded that the sentence was appropriate and lawfully imposed.  The

16   appellate court specifically rejected Moss' argument that his sentence was based on consideration

17   of any inaccurate or unreliable facts.

18        In short, Moss has failed to demonstrate that his sentence was imposed in violation of his

19   "right to notice" or was otherwise based on inaccurate information.  Accordingly, he cannot

20   demonstrate either deficient performance on the part of his trial counsel in failing to raise an

21   objection to his sentence on these grounds or any prejudice resulting therefrom.  As such, he is

22   not entitled to relief.

23   /////

24   /////

25   /////

26

27   _____

       [12]  Although the minutes reflect a sentencing date of February 13, 2007 (ECF No. 184), it
28   appears from all other docket entries that Moss' judgment and sentencing hearing in fact took
     place on February 9, 2007.  *See* ECF Nos. 182, 183, 185 & 188.

                                                   45

### c. **Failure to Argue that Movant's Sentence for Count 8 should be Based on the Indictment**

In his next ground for relief, Moss claims that his trial counsel rendered ineffective assistance in failing to argue that "the sentence for Count 8 should be based on the indictment, i.e. possession instead of use." ECF No. 354-1 at 7.

As noted above, the jury verdict finding Moss guilty on Count 8 was consistent with the allegations of the operative indictment. The Ninth Circuit found on appeal that his conviction and sentence was supported by sufficient competent evidence. Under these circumstances, the failure of trial counsel to argue that Moss' sentence should be "based on the indictment" did not constitute deficient performance, nor did it result in prejudice to Moss. Accordingly, Moss is also not entitled to relief on this claim.

### 5. **Appeal**

Moss also claims that his appellate counsel rendered ineffective assistance. His claim in this regard is stated, in full, as follows:

> Petitioner's counsel failed to: (1) properly challenge the denial of Petitioner's motion to suppress: failed to argue that the warrantless search was not justified once the women (contraband and evidence), who were the basis of the alleged probable cause, were removed from the vehicle; (2) challenge the erroneous jury instructions for Count 8; (3) challenge the constructive amendment of the indictment as to Count 8 that occurred; (4) properly argue the sufficiency of the evidence for Count 8; (5) the impermissible double counting that occurred during sentencing; (6) the violation of Petitioner's statutory right to a speedy trial; (7) the violation of Petitioner's constitutional right to a speedy trial; (8) that the 10-year mandatory minimum sentence for Count 8 was erroneous since Petitioner was not charged with or convicted of use.

ECF No. 354-1 at 8. In his objections to the original findings and recommendations in this matter, Moss appeared to withdraw claims (1), (6), (7), and possibly (8), set forth above. ECF No. 296 at 19-20. However, again in an abundance of caution, all of these claims will be addressed on the merits.

/////

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") There is, of course, no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, appellate counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434. In order to establish prejudice in this context, petitioner must demonstrate that, but for appellate counsel's errors, he probably would have prevailed on appeal. *Id.* at 1434 n.9.

Moss' claim that his appellate counsel rendered ineffective assistance in failing to challenge the trial court's denial of the motion to suppress evidence is conclusory, vague, and unsupported by any factual assertions. Moss has failed to explain how, or to demonstrate that, appellate counsel would have prevailed on any such claim on appeal. Accordingly, Moss' claim of ineffective assistance of appellate counsel should be rejected on that basis alone. *Jones*, 66 F.3d at 204; *James*, 24 F.3d at 26.

To the extent petitioner now claims that his appellate counsel rendered ineffective assistance by failing to properly argue the sufficiency of the evidence with respect to his conviction on Count 8 and the impermissible "double counting" of his conduct in sentencing, his claims are belied by the record. On appeal, Moss' counsel did, in fact, argue that the evidence introduced at trial was insufficient to support a conviction on Count 8 and that the trial court had impermissibly relied on the same conduct twice in departing upward from the guidelines in imposing sentence. ECF No. 243 at 4. Accordingly, Moss' claim that his appellate counsel

rendered ineffective assistance in failing to raise these two claims on appeal lacks a factual basis and must also be rejected on that basis.

The court has already concluded that Moss' claims that that the trial court violated his constitutional and statutory rights to a speedy trial and that the jury verdict constituted a constructive amendment to the indictment, lack merit. Of course, the failure of an attorney to raise a meritless claim is not prejudicial. *See Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012). Moss has also failed to establish that his appellate counsel rendered ineffective assistance in failing to challenge a jury instruction that was the Ninth Circuit model instruction at the time was given at his trial. Accordingly, Moss has also failed to establish prejudice with respect to these claims.

Finally, Moss has failed to demonstrate that his appellate counsel would have prevailed had he argued on appeal that "the 10-year mandatory minimum sentence for Count 8 was erroneous since Petitioner was not charged with or convicted of use." Appellate counsel's decision not to include this argument in Moss' direct appeal, but to instead focus on arguments that counsel believed were more meritorious, was certainly "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). *See also Jones*, 463 U.S. at 751–54 (an experienced attorney knows the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues").

In sum, Moss has failed to demonstrate that his appellate counsel rendered ineffective assistance in failing to raise the above-listed arguments on appeal nor has he established any prejudice flowing therefrom. Accordingly, Moss is not entitled to relief on his claim that his appellate counsel provided him ineffective assistance.

**B. *Johnson* Claims**

Moss argues that his conviction pursuant to 18 U.S.C. § 924(c)(3) should be vacated because, after *Johnson v. United States*, 135 S. Ct. 2551 (2015), neither 18 U.S.C. § 1591 nor 18 U.S.C. § 2423(a) qualifies as a crime of violence pursuant to § 924(c). ECF No. 354 at 4. In *Johnson*, the Supreme Court found that the residual clause of the Armed Career Criminal Act

(ACCA)'s definition of 'violent felony' found at § 924(e)(2)(B) was void for vagueness.  135 S.

Ct. 2551 at 2557.  The ACCA defines a 'violent felony' as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. §924(e)(2)(B).  The closing words of §924(e)(2)(B)(ii), namely: "or otherwise involves

conduct that presents a serious potential risk of physical injury to another", constitute the act's

residual clause.  After *Johnson* was handed down, the Ninth Circuit decided *Dimaya v. Lynch*,

803 F.3d 1110 (9th Cir. 2015), wherein it considered 18 U.S.C. § 16, which provides that a

"crime of violence" is:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The *Dimaya* court found that, after *Johnson*, § 16(b) is void for vagueness because it "is subject

to identical unpredictability and arbitrariness as ACCA's residual clause."  803 F.3d at 1115.

Moss relies on *Dimaya* and points to the fact that § 924(c)(3)(B)'s language describing a "crime

of violence" is identical to §16(b).  Section 924(c)(3) provides that a "crime of violence" is:

> an offense that is a felony and--
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

1    18 U.S.C. § 924(c)(3) (emphasis added).

2         Moss' conviction under § 924(c) for possessing a firearm in relation to a "crime of

3    violence" rests on three convictions – one falling under 18 U.S.C. § 1591(a)(2) (Sex Trafficking

4    of Children or by Force, Fraud, or Coercion) and two falling under 18 U.S.C. § 2423(a) (Interstate

5    Transportation of a Minor with Intent to Engage in Criminal Sexual Activity).  ECF No. 89 at 5-

6    6; ECF No. 147 at 25-31.  Any one of these convictions, assuming it remains a "crime of

7    violence" within the meaning of 924(c), will suffice to uphold his conviction.  The court

8    concludes that offenses under either 18 U.S.C. § 1591(a)(2) or 18 U.S.C. § 2423(a) do not fall

9    within the "elements clause" of § 924(c)(3)(A) insofar as they do not have "as an element the use,

10   attempted use, or threatened use of physical force against the person or property of another."

11   Respondent makes no argument to the contrary.  Accordingly, this issue turns on whether

12   § 924(c)(3)(B) remains valid after *Johnson* and *Dimaya*.

13        The Ninth Circuit has not yet ruled on continuing validity of § 924(c)(3)(B).  In its

14   previous motion to stay these proceedings the government pointed to three cases now pending

15   before the Ninth Circuit which raise this issue, namely: *United States v. Begay*, 9th Cir. Case No.

16   14-10080, *United States v. Gaytan*, 9th Cir. Case No. 14-10167, and *United States v. Andrade*,

17   9th Cir. Case No. 14-10226.  ECF No. 342 at 2.  None of these cases has yet been decided.

18   Indeed, the Ninth Circuit has stayed consideration of whether § 924(c)(3) is void under *Johnson*

19   pending the Supreme Court's consideration of *Dimaya*.  *See United States v. Begay*, No. 14-

20   10080, 2017 U.S. App. LEXIS 12604 (9th Cir. Mar. 29, 2017);  *Lynch v. Dimaya*, 137 S.Ct. 31,

21   195 L. Ed. 2d 902 (2016).

22        Absent a clear ruling on this issue from the Ninth Circuit, district courts within this circuit

23   have reached differing conclusions.  As Moss points out, some courts – including several in this

24   district – have relied on *Dimaya* to hold § 924(c)(3)(B) unconstitutionally vague.  *See, e.g.*,

25   *United States v. Lattanaphom*, 159 F. Supp. 3d 1157, 1164 (E.D. Cal. 2016); *United States v.*

26   *Bell*, 158 F. Supp. 3d 906, 922-24 (N.D. Cal. 2016).  Others have emphasized *Dimaya*'s notation

27   that "[o]ur decision does not reach the constitutionality of applications of 18 U.S.C. § 16(b)

28   outside of 8 U.S.C. § 1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C.

§ 16(a)'s definition of a crime of violence," 803 F.3d at 1120 n.17, and found that § 924(c)(3)(B) remains valid. *See, e.g., Hernandez v. United States*, No. 10-CR-3173-H-3, 2016 U.S. Dist. LEXIS 184032 at *9 (S.D. Cal. Nov. 8, 2016); *United States v. Lott*, No. 95-CR-0072 WQH, 2017 U.S. Dist. LEXIS 19497 at *10 (S.D. Cal. Feb. 9, 2017); *Mondragon-Hernandez v. United States*, 10-CR-3173-H-1, 2017 U.S. Dist. LEXIS 41720 at *10 (S.D. Cal. Mar. 22, 2017).[13]

The court anticipates that this issue, at least as it pertains to this circuit, will be clarified by the Supreme Court's forthcoming decision on *Dimaya* and, subsequently, the Ninth Circuit's ruling in *Begay*. Accordingly, the court finds it appropriate to recommend that this issue be stayed pending the Supreme Court's ruling on *Dimaya* and, subsequently, the Ninth Circuit's decision in *Begay*.

## V. Conclusion

Accordingly, it is hereby ORDERED that:

1. Movant's October 21, 2013 motion for default judgment (ECF No. 284) is denied;

2. Movant's August 22, 2014 motion to dismiss respondent's opposition to movant's motion to amend (ECF No. 290) is denied; and

3. The order to show cause issued on October 17, 2013 (ECF No. 283) is discharged.

Additionally, for all of the reasons set forth above, it is hereby RECOMMENDED that:

1. Movant's motion pursuant to 28 U.S.C. § 2255 (ECF No. 354) be DENIED with respect to all claims other than his *Johnson* claims;[14] and

/////

---

[13] Additionally, several other circuit courts have considered this issue and ruled in favor of §924(c)(3)(B)'s continuing validity. *See United States v. Prickett*, 839 F.3d 697, 700 (8th Cir. 2016) ("We therefore conclude that *Johnson* does not render § 924(c)(3)(B) unconstitutionally vague."); *United States v. Hill*, 832 F.3d 135, 146 (2d Cir. 2016) ("Section 924(c)(3)(B) does not involve the double-layered uncertainty present in *Johnson II*."); *United States v. Taylor*, 814 F.3d 340, 375-79 (6th Cir. 2016); *United States v. Davis*, 2017 U.S. App. LEXIS 1740 (5th Cir. Tex. Jan. 31, 2017) ("We join several other circuits in concluding that *Johnson* does not invalidate § 924(c)(3)(B).").

[14] This does not include a recommendation for entry of an interlocutory judgment under Rule 54(b) and entry of a final judgment must await resolution of the stayed claims. Should either party seek entry of judgment under Rule 54(b) they should file an appropriate motion.

2.  Movant's *Johnson* claims be STAYED pending a decision by the United States Supreme Court in *Sessions v. Dimaya*, No. 15-1498 and, subsequently, the Ninth Circuit's decision in *United States v. Begay*, No. 14-10080, 2017 U.S. App. LEXIS 12604 (9th Cir.).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 29, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

52